**DOBBS, INC., Plaintiff-Appellee,**

v.

**LOCAL NO. 614, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant-Appellant.**

No. 85–1529.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 4, 1986.
Decided March 2, 1987.

James O. Flynn, Flynn and Wendzel, P.C., Pontiac, Mich., for defendant-appellant.

David P. Wood, Detroit, Mich., for plaintiff-appellee.

Before KRUPANSKY, NELSON and RYAN, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

The appellant labor union seeks review of a district court order setting aside an arbitrator's award in favor of the union and its member, Anthony Vacante. Mr.

Vacante, who had been employed as a warehouseman, was discharged for habitual tardiness. We agree with the district court that the arbitrator's decision failed to draw its essence from the collective bargaining agreement under which Mr. Vacante's grievance was submitted to arbitration, and we shall affirm the district court's judgment.

Mr. Vacante was late for work four times in the month of January, 1984. On February 13, 1984, his employer, appellee Dobbs, Inc., gave him a written warning for his violation of a work rule prohibiting habitual tardiness. The warning apparently had no effect, and Mr. Vacante was again tardy four times during the month of February. At a disciplinary meeting on March 7, 1984, Mr. Vacante received an "Employee Infraction and Disciplinary Action Form" listing the dates of his tardiness in February and stating that this was his second offense. Although the company could have punished Mr. Vacante by imposing a lay off of up to one week, Dobbs was quite busy in March and Mr. Vacante was not laid off. He later testified that when he was handed the disciplinary document the warehouse manager—who had written "no time off" across the bottom of the form—said that "he was waiving the time off."

Mr. Vacante appeared for work punctually for the next few months, but ran into difficulty again in June of 1984. He was tardy six times in that month.

The collective bargaining agreement permitted the company to fire an employee for a third offense against the habitual tardiness rule, and Dobbs terminated Mr. Vacante's employment on that ground. That discharge became the subject of a grievance promptly filed by the union. The parties were unable to resolve the dispute, and the grievance was submitted to arbitration in accordance with the collective bargaining agreement. After a hearing and the filing of briefs, the arbitrator issued an opinion reinstating Mr. Vacante and awarding him backpay. The discharge was held to be invalid because the company had not imposed a time-off penalty in March for Mr. Vacante's second violation of the habitual tardiness rule.

The company filed a complaint in federal district court asking that the arbitrator's decision be set aside. Both sides moved for summary judgment, and the district court ruled in favor of the company, holding that the arbitrator's decision did not draw its essence from the collective bargaining agreement. The union has appealed.

\*　　\*　　\*

"The standard of review in arbitration cases is very narrow." *Anaconda v. District Lodge No. 27, International Association of Machinists,* 693 F.2d 35, 36 (6th Cir.1982). Indeed, the "courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). Nevertheless, an arbitrator's award is legitimate only if it "draws its essence from the collective bargaining agreement." *Detroit Coil v. International Association of Machinists & Aerospace Workers, Lodge No. 82,* 594 F.2d 575, 579 (6th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979) (citing *United Steelworkers v. Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361). The "arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil,* 594 F.2d at 579 (citations omitted). Further, there may be a departure from the essence of the agreement if "(1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement...." *Cement Divisions, National Gypsum Co. v. United Steelworkers of America,* 793 F.2d 759, 766 (6th Cir.1986) (citations omitted).

Two provisions of the collective bargaining agreement signed by the union and the

company are relevant here. Article 29, detailing management rights, expressly recognizes the right of the company "to discharge for proper cause, [to] discipline and to enforce working rules...." The article provides that:

"The right to manage the Employer's operations, including but without limitation ... the right to hire and maintain order and efficiency, to discharge for proper cause, discipline and to enforce working rules ... are all recognized by the Union and the employees to be among those rights vested in the company. Claims of discrimination in the enforcement or application of the rights set forth shall be subject to the procedures established in this Agreement for the settlement of grievances."

Work Rule 12, as set forth in the contract, reads as follows:

"12. Habitual tardiness from work without permission. Habitual shall be defined as three (3) times tardy in a calendar month. A grace period of up to three (3) minutes will be honored.

1st Offense   Written warning
2nd Offense   Layoff up to one week
3rd Offense   Subject to discharge."

There is no dispute that Mr. Vacante was tardy more than three times in each of the months of January, February, and June of 1984.

Whether the arbitrator's decision is viewed as disregarding or modifying plain and unambiguous provisions of the bargaining agreement, or as imposing additional requirements that are not expressly provided in the agreement, we are in accord with the district court's conclusion that the arbitrator exceeded his authority.

The arbitrator offered the following justification for the conclusion that Mr. Vacante's habitual tardiness in June of 1984 did not constitute the third violation of Work Rule 12:

"Pursuant to the decision of Mr. Rossi [the warehouse manager], Grievant Vacante was given no time off (no layoff) for the second offense under Rule No. 12. Clearly, it was to the Company's advantage not to lay the Grievant off on March 7, 1984. This decision was in non-

compliance with the *requirement* under Rule No. 12 that on the second offense the employee is to receive 'Lay off up to one week'. This Rule does not provide the option for the Company to waive one portion of the discipline (lay off) but nevertheless retain the discipline as a second offense for purposes of subsequently counting it against the Grievant for discharge purposes.

\*   \*   \*   \*   \*   \*

"The upshot of this review is that the issuance of disciplinary action on March 7, 1984 relative to Grievant Vacante's second offense was in noncompliance with Work Rule No. 12. As such, it cannot be considered as a valid second offense. Consequently, the July 10, 1984 discipline is determined to properly constitute the second offense as opposed to the third offense upon which the Grievant's discharge was predicated." (Emphasis in original.)

The arbitrator noted that Mr. Vacante "was not compelled to demand a lay off [at the March 7, 1984, meeting], since such action would axiomatically be against his own interest," and the arbitrator thus appears to have recognized that his interpretation of the bargaining agreement would, to some, seem counterintuitive. The arbitrator's interpretation was that the union and the company had agreed to require the company to impose a penalty for each infraction of the work rule, whether the company wanted to punish a particular infraction or not. No such requirement is spelled out in the collective bargaining agreement, and why the union would want a provision that "would axiomatically be against [its] own [members'] interest" is not explained in the award.

Work Rule 12 neither says nor implies that an offense noted but not punished is not an offense at all. The language of the rule is plain and unambiguous, and it does not in any way suggest that the existence of a "3rd Offense" is somehow dependent on imposition of a penalty for the preceding offense.

The arbitrator noted that the penalties for violations of other work rules are expressed in "discretionary" language (*e.g.,* "Up to three working days off" for a third

violation of Rule No. 4), while in Rule No. 12 "the second offense language is mandatory." We are at a loss to understand, however, why there is anything more "discretionary" about authorizing a penalty of "up to" three days off than there is about authorizing a penalty of "up to" one week off. Surely the fact that the draftsman said "Layoff up to one week" rather than "Up to one week layoff" has no significance; to suppose that the former version signifies that a layoff for some period of time is mandatory while the latter does not would be comparable to supposing that the draftsmen worshiped at the altar of deconstructionism and believed their words had only such meaning as the individual reader might arbitrarily assign to them.

■ At no point in his award did the arbitrator refer to Article 29 of the agreement, which recognizes and confirms the company's right to "discipline and to enforce working rules...." The award imposed a limit on the exercise of that right that is without warrant in the terms of the contract. When an arbitral award creates unwarranted limitations on rights vested exclusively with one party, the arbitrator has exceeded his authority. *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154 (6th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983).

That the arbitrator was creating a contract of his own, rather than applying the contract agreed to by the parties, becomes apparent from his discussion of how Dobbs should have handled the March 7, 1984, meeting with Mr. Vacante. "Had the Company issued this waiver [of punishment] in writing, with Union agreement, that another offense would mean discharge even though no lay off was effectuated, this discharge would stand," according to the arbitrator. The contract nowhere provides that punishment may only be waived in writing and with union agreement, and to read such restriction into the contract is to ignore Article 29; that article makes it clear that the right to impose discipline is "vested in the company," not in the company and the union together.

■ Here, as in *Local 342, UAW v. TRW*, 402 F.2d 727, 729 (6th Cir.1968), *cert.*

*denied*, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969), "the company's contract with the union, of which all of the individuals were members, gave [the company] a clear right to do what it did." The work rule stated, without elaboration, that an employee committing a third offense of habitual tardiness would be subject to discharge. Terms in a collective bargaining agreement are to be given their ordinary meaning in the absence of "evidence indicating that the parties to this contract intended to expand or otherwise deviate from that meaning." *Detroit Coil*, 594 F.2d at 580, *supra*. "Offense" is commonly understood to mean simply a violation of the applicable rule of conduct. *Webster's Third New International Dictionary*, (1981). No one denies that Mr. Vacante violated Work Rule 12 on three separate occasions, and the word "offense" cannot bear the construction—"violation for which punishment has been imposed"—that the arbitrator gave it.

The judgment of the district court is AFFIRMED.