836 F.2d 549
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 HIGHLANDS HOSPITAL CORPORATION, INC., d/b/a Highlands
Regional Medical Center, Plaintiff-Appellant,
v.
DISTRICT 1199 WV/KY/OH NATIONAL UNION OF HOSPITAL AND HEALTH
CARE EMPLOYEES, AFL-CIO, Defendant-Appellee.
 
 No. 86-6227.
 United States Court of Appeals, Sixth Circuit.
 Dec. 18, 1987.
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Highlands Hospital Corporation, Inc. ("the hospital"), appeals the judgment of the district court affirming an arbitration award, denying the hospital's motion for summary judgment, and granting the motion for summary judgment of defendant, District 1199 WV/KY/OH National Union of Hospital and Health Care Employees, AFL-CIO ("the union").
 
 
 2
 In its appeal to the district court, the hospital asserted that the arbitrator had exceeded the scope of his authority by reducing the penalty of discharge which had been imposed upon a nurse-employee for professional misconduct. She had been responsible for the peritoneal dialysis of a patient who, in the opinion of a medical expert, died as a result of her having improperly performed the procedure. The nurse challenged her discharge under the grievance procedure provided for in the collective bargaining contract between the hospital and the union.
 
 
 3
 The grievance was pursued to arbitration. The arbitrator interpreted the collective bargaining agreement as granting him the authority to determine both that the nurse had not performed her work in accordance with the highest standards of professional competence, and that discharge was inequitable and should be reduced to a four-month suspension without pay. The arbitrator's award was appealed to the district court and, by agreement, was referred to a magistrate, who affirmed the award.
 
 
 4
 On appeal to this court, the hospital argues that the arbitration award conflicted with the express terms of the collective bargaining agreement, and that the arbitrator therefore exceeded the scope of his authority. Pertinent portions of the union contract follow:
 
 ARTICLE III--MANAGEMENT PREROGATIVES
 
 5
 The operation, control and management of the Medical Center and the supervision, direction and discipline of its working force are solely and exclusively the functions and rights of Management. The functions and rights of Management not specifically restricted or modified by explicit provisions of this agreement are reserved exclusively to the Medical Center and shall not be subject to arbitration.
 
 
 6
 ....
 
 
 7
 ARTICLE VI--GRIEVANCE PROCEDURE AND ARBITRATION
 
 
 8
 Section 1 --A grievance is any dispute or complaint of employees or the Union arising from or based on a violation or alleged violation of this agreement by the Medical Center. All such grievances shall be settled and determined through the following procedure:
 
 
 9
 ....
 
 
 10
 Step (d)--If the grievance is not then satisfactorily settled and if the grievance is otherwise arbitrable under this agreement, it may be referred to arbitration in strict accordance with the provisions of this agreement pertaining to arbitration....
 
 
 11
 ....
 
 
 12
 Section 4 -- ... No grievance shall be arbitrable if it is non-arbitrable under the "Management Prerogatives" Article of this Agreement.
 
 
 13
 ....
 
 
 14
 Section 7 -- ... The Arbitrator shall never in any degree or to any extent substitute his judgment for the Medical Center's judgment, and where matters of judgment are involved (if the case is otherwise arbitrable under this agreement) he shall be limited to deciding whether or not the Medical Center acted capriciously or in bad faith.
 
 
 15
 ....
 
 ARTICLE VIII--DISCIPLINE AND DISCHARGE
 
 16
 ....
 
 
 17
 Section 2 --The Medical Center shall have the right to discipline or discharge employees who have completed their probationary period, for good cause.
 
 
 18
 ....
 
 
 19
 ARTICLE XXX--GENERAL PROVISIONS WITH RESPECT TO OPERATIONS
 
 
 20
 Section 1 -- ... [T]he Medical Center has the right to require its employees to at all times maintain, and perform their work in accordance with, the highest standards of professional competence.... The Medical Center shall have the right to determine if an employee has complied with the provisions of this Article and in the event the Medical Center determines that an employee has failed to so comply, such failure shall be cause for immediate suspension or discharge.
 
 
 21
 The hospital contends that when these provisions of the contract are read together the conclusion is inescapable that the arbitrator may review, under a capricious or bad-faith standard, the hospital's judgment that an employee has not conformed to the highest standards of professional competence, but once the arbitrator has decided that the hospital's judgment in that regard was not capricious or in bad faith, the selection of the disciplinary penalty of suspension or discharge is left solely to the hospital and is not subject to arbitration. The union argues that the choice of penalty is itself a "judgment" within the meaning of Article VI, Sec. 7, of the contract, and therefore subject to review by the arbitrator.
 
 
 22
 "Courts are required to refrain from reviewing the merits of an arbitrator's award due to the strong policy favoring arbitration as a means of resolving labor disputes. An award may, however, be reviewed to determine whether the arbitrator exceeded the limits of his contractual authority." Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, 793 F.2d 759, 766 (6th Cir.1986). Although an arbitrator may construe ambiguous contract language, he may not disregard or modify plain and unambiguous provisions. Detroit Coil Co. v. International Ass'n of Machinists & Aerospace Workers, Lodge No. 82, 594 F.2d 575, 579 (6th Cir.1979), cert. denied, 444 U.S. 840 (1979). The question presented by this appeal is whether the arbitrator exceeded his authority under the contract by reviewing and modifying the penalty imposed by the hospital.
 
 
 23
 The contract unambiguously reserves to the hospital the selection of a punishment once good cause has been found. Good cause itself is arbitrable under a capricious or bad-faith standard pursuant to Article VI, Sec. 7, of the agreement. Article XXX, Sec. 1, confers upon the hospital the right to require its employees to perform their work in accordance with the highest standards of professional competence, and provides that failure to comply with those standards is cause for immediate suspension or discharge. Thus, professional misconduct is defined as just cause.
 
 
 24
 Accordingly, while the question of whether an employee has met the standard of professional competence is arbitrable, the decision of which penalty should be imposed when an employee has not met that standard is within the sole discretion of the hospital and not subject to arbitration.
 
 
 25
 The arbitrator found that the hospital's judgment that the nurse had failed to meet the highest standards of professional competence was not capricious or made in bad faith. Having once found the existence of just cause, the arbitrator exceeded the scope of his authority when, under the unambiguous terms of the contract, he went on to determine that the penalty imposed by the hospital was inequitable and should be reduced.
 
 
 26
 Our view of the union contract in this case is consistent with that recently taken by a panel of this court in an appeal involving a similarly worded contract, where it was held that, when an arbitration award creates unwarranted limitations on rights vested exclusively in one party, the arbitrator exceeds his authority. Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters, 813 F.2d 85, 88 (6th Cir.1987).
 
 
 27
 In view of the foregoing, the decision of the district court is reversed, and this cause is remanded to the district court with instructions to set aside that portion of the award which exceeded the arbitrator's authority.
 
 
 28
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 29
 In Dobbs, Inc. v. Local No. 614, International Brotherhood of Teamsters, 813 F.2d 85, 88 (6th Cir.1987), we affirmed the setting aside of an arbitral award because we agreed with the district court that, as we put it, "the arbitrator was creating a contract of his own, rather than applying the contract agreed to by the parties...." In the case at bar the district court was not persuaded that the arbitrator was creating a contract of his own, and neither am I. Our precedents teach that if there is "any" basis for the arbitrator's construction of the collective bargaining agreement, "we lack authority to alter the arbitrator's determination." Morgan Services, Inc. v. Local 323, Amalgamated Clothing and Textile Workers Union, 724 F.2d 1217, 1222 (6th Cir.1984).[1] I cannot say that there was no basis for the arbitrator's construction of the collective bargaining agreement involved in this case, and I therefore conclude that we lack authority to alter the arbitrator's determination.
 
 
 30
 One way of approaching an understanding of the basis for the arbitrator's construction of the agreement is to start with the basis for the hospital's construction. The hospital advances a series of propositions each of which is unquestionably true, but draws from them a conclusion that seems questionable. Proposition one: The contract says that the hospital shall have the right to discharge employees for good cause. Proposition two: The contract says that an employee's failure to perform her work in accordance with the highest standards of professional competence constitutes such good cause. Proposition three: The employee whose grievance is under consideration here failed to perform her work in accordance with the highest standards of professional competence. Conclusion: The contract requires the arbitrator to affirm the discharge regardless of whether the employee was in fact discharged for failure to meet the highest standards of professional competence or was discharged, capriciously, for some other reason--such as the hospital's needing to deflect criticism from itself for requiring an inadequately trained licensed practical nurse to perform a task with which she had told the hospital she did not feel "comfortable" and that ought to have been assigned to a properly trained registered nurse.
 
 
 31
 The arbitrator did not dispute the truth of any of the propositions on which the hospital's argument rests, but he nonetheless found it possible to read the agreement as suggesting that the objective existence of good cause for discharge is not necessarily dispositive of the question whether the discharge was in fact the result of that "cause." Let me try to illustrate the arbitrator's point with the following hypothetical:
 
 
 32
 Suppose the contract had said "nurses shall not smoke cigarettes while on duty, and violation of this rule shall constitute good cause for immediate discharge." Suppose further that every nurse on the staff had been violating this rule for years, without penalty, until a day came when the lowest practical nurse on the roster was discharged while smoking a cigarette on duty. Suppose further that an arbitrator determined, as a factual matter, that the reason for the discharge was a desire on the part of the hospital administrator to create a vacancy that could be filled with someone to whom he owed a personal favor. Would it be within the arbitrator's authority to decide that the hospital had, in the words of Article VI, Sec. 7, "acted capriciously," thereby enabling the arbitrator to vacate the discharge and order that a lesser penalty be imposed?
 
 
 33
 In the situation actually before us, the arbitrator analyzed the case much as he might have analyzed my hypothetical. The issue, as he saw it, was this: "Was the Grievant discharged for good cause?" (We know the arbitrator thought this was the issue because he used these exact words in stating what he referred to, in underlined capital letters, as the "ISSUE.") The answer the arbitrator gave was that the grievant was not discharged for good cause, even though events constituting good cause had undeniably occurred. The arbitrator's answer might not be the answer this court would have given, but the parties to the collective bargaining agreement did not contract for this court's answer to questions of fact--they contracted for the arbitrator's.
 
 
 34
 I think it is fair to read the arbitrator's decision as suggesting that the hospital itself bore no little blame for the death of the patient; that it was not the practice of the hospital to discharge nurses for failing to perform their work in accordance with the highest standards of professional competence (as was evidenced by the hospital's failure to discharge a certain registered nurse who had manifested a startling lack of professional competence in respect of the very patient who died); and that because the hospital's decision to discharge the grievant had more to do with the hospital's need for a scapegoat than with the grievant's failure to meet the highest standard of professional competence, the discharge was capricious and the arbitrator was not required to uphold it.
 
 
 35
 The arbitrator does not seem to have believed that he was free to modify the penalty imposed on an employee who was in fact discharged for "good cause." He did, however, read the collective bargaining agreement as authorizing him to modify a penalty capriciously imposed on an employee as to whom there was cause for discharge, but who was not discharged for cause. Because the arbitrator's construction of the collective bargaining agreement does not strike me as having been beyond the pale, I respectfully dissent from the decision to reverse the order in which the arbitrator's award was affirmed.