

Ronald E. Meisburg, Lynn M. Rausch, Smith, Heenan & Althen, Washington, D.C., and Donald H. Combs, Combs & Combs, Pikeville, Ky., for plaintiff.

Deborah Stern, Michael H. Holland and Earl V. Brown, Jr., U.M.W.A., Washington, D.C., and James R. Hampton, Hazard, Ky., for defendants.

**BETHENERGY MINES, INC., Plaintiff,**

v.

**DISTRICT 30, UNITED MINE WORKERS OF AMERICA, LOCAL UNION NO. 5741, United Mine Workers of America, Defendants.**

Civ. A. No. 87–38.

United States District Court,
E.D. Kentucky,
Pikeville Division.

June 3, 1988.

## MEMORANDUM OPINION AND ORDER

SCOTT REED, District Judge.

The court is in receipt of the report and recommendation of United States Magistrate Joseph M. Hood in the above-styled action. The magistrate considered the record and recommended that BethEner-

gy's motion for summary judgment should be granted and that the arbitrator's decision should be vacated on the grounds that the arbitrator's decision is contrary to the express terms of the collective bargaining agreement and, therefore, fails to draw its essence from such agreement. Specifically, the magistrate concluded that the arbitrator had disregarded the plain meaning of the term "operation" by considering the term "coal lands" included within the meaning therein. The Union has objected to the magistrate's report and recommendation.

Subsequent to a *de novo* review of the record, including the Union's objections to the magistrate's report and recommendation as well as the response, reply, and surresponse thereto, the court is of the opinion that this matter should be resolved along the lines of the magistrate's report and recommendation and that the objections thereto are without merit and should be overruled. The court has carefully reviewed the recent Supreme Court holding concerning the standard of review of arbitration awards in *United Paperworkers International v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), and finds that the standard of review set forth in the magistrate's report and recommendation is consistent with the holding in *Misco*. *Id.* 108 S.Ct. at 371 (recognizing that an arbitrator "may not ignore the plain language of the contract"); *see also Highlands Hospital Corp. v. District 1199, WV/KY/OH Natl. Union of Hospital and Health Care Employees*, No. 86–6227, slip op. at 4 (6th Cir. Dec. 18, 1987) [836 F.2d 549 (table)] (post-*Misco* decision holding that an arbitrator may not disregard or modify plain and unambiguous provision of a bargaining contract); *Equitable Gas Co. v. United Steelworkers of America*, 676 F.Supp. 648 (W.D.Pa.1987) (same).

In the instant case, the record clearly shows that "coal lands" is not included within the meaning of the term "operations." This interpretation is supported by prior arbitration awards, federal court cases which have addressed this issue, and the differentiation of such terms as found in other provisions of various relevant national employment and wage agreements.

As such, the magistrate correctly concluded that the arbitrator's award should be vacated because it ignored the plain meaning of the term "operations." *See Dobbs v. Local No. 614*, 813 F.2d 85, 86 (6th Cir. 1987), *citing Cement Divisions, National Gypsum Co. v. United Steelworkers of America*, 793 F.2d 759, 766 (6th Cir.1986).

Accordingly, the court being duly and sufficiently advised,

IT IS HEREBY ORDERED as follows:

1. Objections of the Union to the magistrate's report and recommendation are OVERRULED.

2. The magistrate's report and recommendation is ADOPTED in its entirety as the findings of fact and conclusions of law of the court.

3. The motion of BethEnergy Mines for summary judgment is GRANTED.

4. The award of the arbitrator is VACATED and SET ASIDE.

5. This action is DISMISSED and STRICKEN from the docket.

## MAGISTRATE'S REPORT AND RECOMMENDATION

JOSEPH M. HOOD, United States Magistrate.

BethEnergy filed Civil Action No. 87–38 in this district seeking to vacate the arbitrator's award under 29 U.S.C. Section 185(a) and has filed a motion for summary judgment vacating the arbitrator's award. The International Union filed an action seeking enforcement of the award in the District of Columbia. The International Union's action was transferred to this district and was consolidated with BethEnergy's action. This matter has been referred to the undersigned for initial review and a report and recommendation pursuant to 28 U.S.C. Section 636(b)(1)(B).

The undersigned recognizes that "the standard for judicial review of arbitration decisions is 'extremely limited.'" *Brotherhood Railway Carmen v. Norfolk and Western Railway*, 745 F.2d 370, 375 (6th

Cir.1984), *quoted in, Schneider v. Southern Railway Company*, 822 F.2d 22 (6th Cir.1987). The Sixth Circuit recently emphasized that the reviewing court cannot set aside an arbitrator's decision based upon a different interpretation of the contract. *See Dobbs v. Local No. 614*, 813 F.2d 85, 86 (6th Cir.1987).

The reviewing court, however, can set aside an arbitrator's decision which fails to "draw its essence from the collective bargaining agreement." *Id.* An opinion and award fails to draw its essence from the agreement if the award conflicts with the express terms of the agreement; imposes additional requirements which are not expressly stated in the agreement; lacks rational support or cannot be rationally derived from the terms; or is based upon general considerations of fairness and equity instead of the exact terms of the agreement. *Dobbs*, 813 F.2d at 86, *citing, Cement Divisions, National Gypsum Co. v. United Steelworkers of America*, 793 F.2d 759, 766 (6th Cir.1986).

The facts, which are basically undisputed, are that BethEnergy acquired approximately 100,000 acres of minerals in the District 30 area in 1956. On December 31, 1985, BethEnergy caused its parent corporation Bethlehem Steel Corporation to execute a lease with Manning Coal Corporation granting Manning surface mining rights to 500 acres in four coal seams. The leased property had previously been deepmined by BethEnergy or its contractors, lessees, or predecessors in title. Under the terms of the lease, the relationship between the parties is that of landlord and tenant. BethEnergy neither bought any of the coal mined by Manning from this lease nor brokered any of the coal for Manning. Manning's operations on the leased property were wholly separate from BethEnergy's mines, preparation plants, and facilities: BethEnergy received from Manning only the tonnage royalties allowed by the lease. Importantly, BethEnergy, a signatory to the 1984 NBCWA, did not include language obligating Manning to assume BethEnergy's obligations under the 1984 NBCWA— or in other words, did not include a successorship clause in the lease with Manning.

On February 12, 1986, the Local Union filed a grievance pursuant to Article XXIII of the 1984 NBCWA. The grievance stated:

Management of Beth–Energy has on 12/31/85 transferred to Manning Coal Co. mining rights to, and assignment of the work jurisdiction on coal lands owned or held under lease by Beth–Energy. This transfer of coal lands by Beth–Energy is a violation of Article I, and Article IA of the National Bituminous Coal Wage Agreement of 1984.

We ask that this lease agreement be declared null and void and that compensation be awarded L.U. 5741, Dist. 30, U.M.W.A. and any and all members thereof who may be shown to suffer a loss as a result of Management's actions.

We ask to [be] made whole in all respects by this grievance.

[Ex. A, p. 8, BethEnergy's complaint].

The successorship clause is in the enabling clause of the 1984 NBCWA and states:

*Article I* ...This Agreement shall be binding upon all signatories hereto ...and their successors and assigns. In consideration of the Union's execution of this agreement, each employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred to or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement....

The enabling clause specifically states that the 1984 NBCWA "covers all of the bituminous coal mines described in Article IA, Section (f)" which are owned or operated by the signatory employers. Article IA(f) provides,

As part of the consideration for this Agreement, the Employers agree that this Agreement covers the operation of all the coal lands, coal producing and coal preparation facilities owned or held under lease by them, or any of them, or any subsidiary or affiliate at the date of this Agreement, or acquired during its term

which may thereafter be put into production or use....

Article IA(h)(1) discusses the leasing, subleasing and licensing out of coal lands:

The Employers agree that they will not lease, sublease or license out any coal lands, coal producing or coal preparation facilities where the purpose thereof is to avoid the application of this Agreement....

Licensing out of coal mining operations on coal lands owned or held under lease or sublease by any signatory operator hereto shall not be permitted unless the licensing out does not cause or result in the layoff of the Employees of the Employer.

The arbitrator, Edwin R. Render, concluded that the Union[1] failed to prove that BethEnergy had leased the coal lands to Manning for the purpose of avoiding the application of the 1984 NBCWA in violation of Article IA(h). The Union has not challenged this conclusion. The second paragraph of IA(h) is inapplicable because licensing was not involved and none of BethEnergy's employees were laid off as a result of the Manning lease.

The issue presented by this action is whether the word "operations" as used in the successorship clause of Article I of the 1984 National Bituminous Coal Wage Agreement [hereinafter NBCWA] includes "coal lands" upon which the signatory lessor has no mining activity or production. The arbitrator concluded that the word "operations" in the successorship clause "is broad enough to cover the coal land which [BethEnergy] leased to Manning" and that BethEnergy had violated the successorship clause by failing to secure Manning's promise to assume Bethenergy's obligations under the 1984 NBCWA with respect to the 500 leased acres. [Arbitrator's decision p. 15].

The arbitrator reached the above-stated conclusion after looking at the various entities which are signatories to the 1984 NBCWA and "considering the fact that

some of these signatory companies conduct their operations through lessees and licensees." The arbitrator, however, failed to consider the distinctions between "coal lands" and "coal mining operations."

It should be noted that "[a]ll collective bargaining agreements between BCOA and the UMWA are not conceived in a vacuum; each side has lawyers scrutinizing every word in light of old interpretations." *Clinchfield Coal Company v. District 28, UMWA,* 556 F.Supp. 522, 530 (W.D.Va.), aff'd, 720 F.2d 1365 (4th Cir.1983). In *Clinchfield,* the district court refused to enforce an arbitrator's award which found that the signatory had violated the provision on leasing or licensing out its coal lands which, with one exception, had not been previously mined, because the arbitrator never discussed the distinction between "coal lands" and "coal mining operations." *Id.,* at 527, 529. The Court noted that the arbitrator's decision "in effect holds that the words 'coal lands' in paragraph one of Section IA(h) is the same as 'coal mining operations' in paragraph two." *Id.,* at 529. The Court held that since Clinchfield had not licensed out "coal mining operations," it had not violated Article IA(h).

Although *Clinchfield,* 556 F.Supp. 522, concerns the distinction between the words "coal lands" and "coal mining operations" in Article Ia(h) paragraphs one and two, the two terms "operations" and "coal lands" are used also in the provisions in question—the successorship clause in Article I and Article IA(f) which specifies to which land the 1984 NBCWA applies. The district court in *Clinchfield* specifically addressed Article IA(f) and stated:

It is apparent from Article IA Section (f) entitled "APPLICATION OF THIS CONTRACT TO THE EMPLOYER'S COAL LANDS" that the contracting parties were aware of the distinction between naked coal lands and coal mining operations. This provision states as follows:

This Agreement covers the operation of all coal lands, coal producing and

---

**1.** The word "Union" is used herein to refer to the three levels of the union involved in this

action unless otherwise specified.

coal preparation facilities owned or held under lease by them....This section will immediately apply to any new operations upon the Union's recognition, certification or otherwise properly obtaining bargaining rights. Notwithstanding the foregoing, the terms of this agreement shall be applied without evidence of Union representation of the employees involved in any relocation of an operation already covered by the terms of this agreement. (Emphasis in original).

*Clinchfield,* 556 F.Supp. at 529–30.

A thorough examination of the arbitrator's opinion discloses that he did not attempt to discuss any distinction between a coal mine operation actively mining, producing, and shipping coal to market and coal lands upon which there was no coal mining activity. The arbitrator simply concluded that "operations" includes the term "coal lands" by reason of the varied nature by which the signatories conduct their coal-related activities. This is not a valid basis for determining whether or not "operations" includes "coal lands" upon which the signatory lessor has *no* coal mining activity. He totally ignored the history of these terms in the collective bargainging agreement. The plain meaning of "operations" does not include "coal lands." The arbitrator's decision is contrary to the express terms of the Agreement and fails to "draw its essence from the collective bargaining agreement." *Dobbs,* 813 F.2d at 86. The undersigned has considered the arguments of the Union but did not find them persuasive.

BethEnergy in Count 3 of its complaint has alleged that the successorship clause of the 1984 NBCWA as interpreted by Arbitrator Render violates Section 8(e) of the National Labor Relations Act, 29 U.S.C. Section 158(e), because the interpretation of the clause would require BethEnergy to cease doing business with Manning unless Manning became a signatory to the NBCWA. With regard to this allegation, BethEnergy has filed an unfair labor practice charge with the NLRB which is still pending. BethEnergy did not discuss this issue in the present motion for summary judgment, but the Union did address the issue in its response.

Because of the undersigned's conclusion regarding the arbitrator's decision, it is unnecessary to address Count 3 especially since the matter is before the NLRB.

It is recommended that BethEnergy's motion for summary judgment should be granted and the arbitrator's decision vacated. This action should then be dismissed from the docket since the Union had sought enforcement of the same arbitrator's decision.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *Thomas v. Arn,* 728 F.2d 813 (6th Cir.1984), *aff'd,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Holbrook,* 794 F.2d 1152, 1154–55 (6th Cir.1986). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.

This 29th day of January, 1988.