**In the Matter of the Arbitration
Between**

**ALLIED BUILDING PRODUCTS
CORPORATION, Petitioner
and Counter–Respondent,**

v.

**LOCAL NO. 247, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN,
AND HELPERS OF AMERICA, Re-
spondent and Counter–Petitioner.**

No. 91–CV–70853.

United States District Court,
E.D. Michigan, S.D.

Sept. 30, 1991.

Dirk Beckwith and Deborah Syx, Cross Wrock P.C., Detroit, Mich., for petitioner and counter-respondent.

Robert J. McClow, Klimist, McNight, Sale, McClow & Canzano, Southfield, Mich., for respondent and counter-petitioner.

OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

INTRODUCTION

This matter is before the Court on Respondent's Motion for Summary Judgment filed March 15, 1991. On March 28, 1991, Petitioner also filed a Motion for Summary Judgment. On May 22, 1991, Respondent filed a brief in opposition to Petitioner's Motion for Summary Judgment.

The facts in this matter are largely undisputed, and the legal issue is discrete and narrowly-focused. The Petitioner claims that the Arbitrator misconstrued the Collective Bargaining Agreement ("CBA") when he held that the Petitioner had wrongly transferred the Grievant to a lower position. The Respondent counters that the Arbitrator's Opinion and Award ("Award") represents a lawful interpretation of the CBA and, thus, is inappropriate for judicial review.

FACTS

Petitioner Allied Building Products Corporation ("Allied") is engaged in the sale and delivery of residential and commercial construction materials. Respondent Local No. 247 ("Union") is a labor union representing some of Allied's employees. Allied and the Union are signatories to a collective bargaining agreement covering employees employed at Allied's Roseville, Michigan facility in the classifications of Warehouse Leader, Truck Driver, Tractor Driver, Warehouseman, Helper, and Summer Help. The CBA is effective from January 29, 1989 until January 28, 1992.

The relevant portions of the CBA read as follows:

ARTICLE VII

TRANSFERS

SECTION I. The Company shall have the right to transfer employees from one job to another. Employees may not unjustifiably refuse to assist or work on temporary assignments even though not part of their usual work or assignment, as the business of the Company requires.

SECTION 2. If it is found necessary to transfer an employee from a higher rated classification to a lower rated classification because of a change in process or reduction in work requiring a lay off, the employee so transferred shall retain his present rate of pay for thirty (30) days after the date of the transfer and shall then be paid the rate of pay for the classification in which he is placed. If the transfer is for a temporary period only (rather than a lay off), the employee shall carry his old rate.

SECTION 3. If an employee is temporarily transferred for the Company's convenience to a higher rated classification, he shall receive the rate of the higher classification for the period of time that he is so assigned. It is understood that

temporary transfers shall not be made to avoid the filling of a permanent full time position, which, at the discretion of management, shall be defined as a position that has been vacated or newly created.

\* \* \* \* \* \*

## ARTICLE XIII

### MANAGEMENT

The Union recognizes that the successful and efficient operation of the business is the responsibility of management, and that the management of the plant and the direction of the working forces, including, but not limited to the right to plan, direct and control plant operations, to hire, suspend, or discharge for proper cause, to transfer, promote, or demote employees in accordance with the agreement, to institute reasonable work rules, to relieve employees from duty because of lack of work or for other legitimate reason, and the right to introduce new or improved production methods or equipment, is vested exclusively in the Company, provided, however, that no employee will be discriminated against as provided in this Agreement. The Union reserves the right to review through Grievance Procedure and Arbitration any question of fact, or the reasonableness of any work rule.

\* \* \* \* \* \*

## ARTICLE IX

### ARBITRATION

SECTION 1. the Arbitrator shall be selected from a list of names requested from the Federal Mediation and Conciliation Service, with each party having the right to reject one complete panel. The Arbitrator's decision shall be final and binding on both parties. However, the Arbitrator shall have no authority to alter, amend or otherwise depart from the terms and provisions of this Agreement.

On or about February 19, 1990, Robert Cadeau ("Cadeau" or "Grievant"), an employee of Allied covered by the CBA, was transferred from the position of Ware-

house Leader to Helper. Cadeau filed a grievance over his transfer and the matter was submitted to arbitration on October 16, 1990 before Arbitrator Alan Walt ("Arbitrator").

At the outset of the hearing, the parties submitted to the Arbitrator a written set of stipulated facts. These stipulations stated, in relevant part, that (1) the Grievant had been transferred from the position of Warehouse Leader to Helper; (2) Article VII of the current contract contains the same language as the predecessor agreement; (3) neither party had proposed changes in Article VII during the most recent negotiations; and (4) Article VII was not discussed during negotiations.

The issue before the Arbitrator was whether Allied had the right under the CBA to transfer Cadeau from the position of warehouse leader to helper.

### DISCUSSION

Analysis of this issue requires the Court to determine, as an initial matter, whether the Award is susceptible to judicial review. Only if an award does not "draw its essence from the collective bargaining agreement" may a court intervene in an arbitrator's decision.

### A. SCOPE OF JUDICIAL REVIEW OF ARBITRATOR'S DECISION

The courts have typically been reluctant to overturn an arbitrator's award, viewing such an award as an extension of the contract and, thus, as an integral part of the parties' contractual agreement. *United Paperworkers Intern. Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987); *Stead Motors v. Automotive Machinists Lodge*, 886 F.2d 1200, 1205 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990) ("Since the labor arbitrator is designed to function in essence as the parties' surrogate, he cannot 'misinterpret' a collective bargaining agreement"). Moreover, were courts to have the final say on the merits of an arbitrator's award, the federal policy of settling labor disputes by arbitration would be compromised. *United Steelwork-*

*ers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

Once the parties have decided to settle their dispute through arbitration and once they have chosen a mutually acceptable arbitrator, the courts have only disturbed an award for the most egregious of breaches by the arbitrator. For all practical purposes, the arbitrator's award—assuming that it does not involve fraud or over-reaching—must be counter-factual or directly contrary to the plain language of the contract to merit judicial intervention. As recently observed by the Supreme Court:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.

*Misco*, 108 S.Ct. at 370–71 (citing *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

The Supreme Court in *Misco* continued by noting that even "silly" and "improvident" factfinding is not sufficient to overturn an award. In fact, an award must stand even if the court is convinced that the arbitrator committed serious error:

> But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Misco*, 108 S.Ct. at 371.[1]

However, an arbitrator is not entitled to "dispense his own brand of industrial justice"; rather his award must draw its essence from the CBA. *United Steelworkers v. Enterprise Wheel*, 363 U.S. 593, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.*

In *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890 (6th Cir.1989), the arbitrator reinstated a discharged employee after finding that his punishment was too severe in comparison with that of another employee charged with similar behavior. The employer claimed, and the district court agreed, that the CBA did not permit the arbitrator to alter the remedy for the breach of a work rule. The CBA there stated both that the right to discharge was within the sole discretion of the employer and that a non-probationary employee could not be discharged without just cause. The court of appeals rejected the district court's interpretation and, relying heavily on *Misco*, found that, as the CBA was not clear as to the ability of the arbitrator to impose sanctions, the arbitrator acted properly in altering the remedy. *Eberhard*, 868 F.2d at 892–93. In other words, the arbitrator was simply construing the contract within the bounds of *Misco*.

In *Dixie Warehouse And Cartage v. General Drivers*, 898 F.2d 507 (6th Cir. 1990), the employee was discharged for drinking while on duty. The CBA specifically stated that an employee may be discharged or suspended without warning for use of alcoholic beverages while on duty. The arbitrator found that the employee had

---

**1.** The *Misco* Court added that decisions reached through fraud or dishonesty need not be honored. *Misco*, 108 S.Ct. at 371. However, as the Petitioner does not accuse Arbitrator Wald of fraudulent or dishonest behavior, the Court need not examine these possible bases for overturning the award.

drunk beer while on duty, that discharge was not an unreasonable penalty for the offense, and that the company had consistently enforced the rule. The arbitrator further found, however, that the employee had been discharged on two grounds, alcohol use and leaving the premises without permission, even though the discharge letter made no reference to this latter charge. Because the charge of leaving the premises without permission was not substantiated by the evidence, the arbitrator held that it was impossible to determine whether the employer would have discharged the employee solely on the alcohol charge. *Id.* at 509.

The employer argued that the arbitrator exceeded the limited authority granted him under the CBA and that the award did not draw its essence from the agreement. *Id.* Initially, the court, citing *Misco,* observed that review of an arbitrator's decision should be highly deferential. As to the first argument, the court, quoting *Eberhard,* held that where nothing "expressly limits or removes from the arbitrator the authority to review the remedy ... the courts must defer to the arbitrator's construction of the contract." *Id.* at 511 (quoting *Eberhard,* 868 F.2d at 892). Here, though the CBA gave the management power to discharge employees for just cause, nothing in the contract limited the arbitrator's power to review and modify the penalty.

As to the second argument, the court noted that suspension is an alternative penalty to discharge. As the arbitrator's award was, in essence, a suspension, he did not violate the plain terms of the contract. As a second justification, the court implied that, since *Misco* and *Eberhard,* the courts have given arbitrators greater authority to construe contract provisions. *Id.* at 511. *See also Interstate Brands v. Chauffeurs, Teamsters Loc. 135,* 909 F.2d 885 (6th Cir. 1990) (court used highly deferential standard to affirm arbitrator's decision to reinstate employee who had been discharged following arrest for possession of cocaine, marijuana, and drug paraphernalia).

If, however, an arbitrator ignores the plain language of a contract, the courts will not sustain the award. In *AP Parts Co. v. International Union, United Auto. Aerospace & Agricultural Implement Workers,* 923 F.2d 488 (6th Cir.1991), the Sixth Circuit overturned an arbitrator's award when it found that the arbitrator had interpreted the word "ratification," which clearly referred to a 1987 agreement, to refer to a 1985 agreement; the arbitrator justified this clearly erroneous decision on common sense and his sense of equity. *Id.* at 490–91. The court vacated the award on the ground that the arbitrator ignored the plain language of the contract and overstepped his scope of authority.

In *Dobbs, Inc. v. Local 614, Int. Bro. of Teamsters,* 813 F.2d 85 (6th Cir.1987), on which Allied principally relies, the arbitrator reinstated an employee who had been discharged for tardiness. The tardiness provision read as follows:

12. Habitual tardiness from work without permission. Habitual shall be defined as three (3) times tardy in a calendar month. A grace period of up to three (3) minutes will be honored.

1st Offense   Written warning

2nd Offense   Layoff up to one week

3rd Offense   Subject to discharge

*Id.* at 87.[2] The employee was not punished by a layoff for his second offense. The arbitrator held that the contract required that the employee be laid off for the offense to count. Therefore, as the employee was not punished, the second offense did not count.

The Sixth Circuit found this interpretation untenable and held that the arbitrator was creating a contract of his own rather than applying the one before him. *Id.* at 88. The court added:

Work Rule 12 neither says nor implies that an offense noted but not punished is not an offense at all. The language of the rule is plain and unambiguous, and it does not in any way suggest that the existence of a "3rd Offense" is somehow

---

**2.** The lower section enumerating the penalties   was written, in the original, in smaller print.

dependent on imposition of a penalty for the preceding offense.

*Id.* at 87. Important for the Sixth Circuit was a section of the CBA granting the management unlimited power to discipline and to discharge an employee for proper cause. *Id.*

The Court must decide, therefore, whether the errors alleged by Allied are of the *Eberhard* or the *AP Parts* variety. Namely, whether the Arbitrator simply misread the contractual language, in which case the Arbitrator's decision may not even be reviewed by the Court. Or whether the Arbitrator ignored the plain language of the contract, in which case the Court may overturn the Arbitrator's decision.

## B. WHETHER THE ARBITRATOR IGNORED THE PLAIN LANGUAGE OF THE CONTRACT

Allied alleges that the Arbitrator made the following errors:

(1) Disregarded the parties' factual stipulation that the Grievant had been transferred;

(2) Based his findings on "negotiations" in the absence of evidence of bargaining history;

(3) Construed Article VII, Section 1 to apply only to temporary assignments;

(4) Construed Article VII, Section 2 to constitute restrictions on Allied's right to transfer rather than as obligations imposed in the event of a transfer;

(5) Added a restriction unstated in the contract that employees may not be transferred so long as they are satisfactorily performing their jobs;

(6) Decided the case as one entailing a just-cause demotion rather than a transfer.

In its appearance before the Arbitrator, the Union submitted that the company did not possess contractual authority to transfer Cadeau from the classification of Warehouse Leader to that of Helper. It contended that Article VII of the CBA gave the company authority to transfer an employee between classifications in only two circumstances: (1) a change in process or (2) a reduction in work requiring a layoff.

Arbitration Opinion and Award ("Award") at 7. As neither situation had occurred, it said, the transfer was impermissible.

The Union further asserted that Section 1 of Article VII governs only temporary work reassignments and is inapplicable to the facts of the case.

It concluded by claiming that Article XIII, the management rights clause, limits the right of the company to effect a transfer to those situations specifically enumerated in the CBA.

As relief, the Union sought Grievant's reclassification as Warehouse Leader together with all pay benefits he would have received had he not been transferred. Award at 8.

The company countered that nothing in the CBA prevented it from transferring the Grievant from Warehouse Leader to Helper. Under the CBA, said the company, the company's right to transfer is limited in only four ways: (1) an employee transferred to a lower paying classification is entitled to receive the higher rate of the former classification for 30 days when the transfer was caused by a change in process or a reduction in force requiring a layoff; (2) an employee continues to receive his prior rate of pay when the reclassification is temporary; (3) an employee temporarily transferred to a higher paying position is entitled to the higher rate of pay while working at that position; and (4) transfers cannot be discriminatory. Award at 8.

The company alleged that as the compensation requirements of Section 2 of Article VII had been met and no other Article VII limitations were present, it possessed the right under the CBA permanently to transfer the Grievant from Warehouse Leader to Helper. Award at 8–9.

The Arbitrator agreed with the Union that Section 1 of Article VII relates to the company's right temporarily to transfer an employee from one task to another while keeping that employee in the same job classification. As support, the Arbitrator cited the second sentence of that section which refers to "temporary assignments." Had "job" not been intended to refer to "tempo-

rary assignments," reasoned the Arbitrator, these two terms would not have been juxtaposed in the same section. The Arbitrator also observed that employees in the Warehouse classification not only work in the warehouse but may also drive or assist in the delivery of merchandise. Award at 9. The Arbitrator held that Section 1 does not embrace the permanent transfer of an employee from one classification to another. Therefore, Section 1 of Article VII could not be used by Allied to support the Grievant's transfer from the classification of Warehouse Leader to that of Helper.

As for Section 2 of Article VII, the Arbitrator once more agreed with the Union. He held that that section permits a transfer from one classification to another, whether temporary or permanent, in only two situations. There must be either a change in process or a reduction in work requiring a layoff. The Arbitrator found that neither of these two conditions existed in the instant case. Award at 9–10.

Having found that Article VII limits transfers between classifications to two circumstances, the Arbitrator held that Article XIII's enumeration of management's power to transfer was limited to those two circumstances by the phrase "in accordance with the agreement." Award at 10–11. The Arbitrator noted that this phrase, arrived at through negotiation by the parties, constituted a limitation on management's right to transfer employees.

Finally, as a concluding observation, the Arbitrator said that to uphold the company's action would render meaningless the negotiated wage scales applicable to the various job classifications.

The Arbitrator then mandated that the Grievant be reclassified to the position of Warehouse Leader and paid the difference in lost wages and benefits due to the transfer. Award at 12.

In its Motion for Summary Judgment, Allied raises several objections to the Award.

### 1. *Reclassification versus transfer*

■ First, it objects to the Arbitrator's use of the word reclassification, as opposed to transfer, to refer to the movement of Grievant to a lower position. According to Allied, the Arbitrator employed this interpretation to avoid the language of Article XIII giving management a broad right to "transfer" employees. As the parties had stipulated that the Grievant had been transferred, this change in terminology was contrary to the stipulation and, therefore, warrants vacation of the Award. Allied's Motion for Summary Judgment (hereinafter "Allied") at 7–8.

The Court finds Allied's argument unpersuasive. The Arbitrator chose the term "reclassification" simply to differentiate a permanent shift in duties from the situation in which an employee is asked temporarily to perform a task outside his classification while retaining his job classification. This choice of terminology in no way impacted on the Arbitrator's interpretation of management's rights under Article XIII. In fact, the Arbitrator found that Article XIII was limited by the phrase "in accordance with the agreement" and not by the use of the word "reclassification." Award at 10.

### 2. *Bargaining History*

The company next claims that the Arbitrator's reference to bargaining history was inappropriate and should serve as a basis for overturning the Award. Allied at 8–9. According to Allied, the Arbitrator held that bargaining history supported his conclusion that transfers were permissible in only two circumstances. However, the only facts as to bargaining history presented to the Arbitrator were those set forth in the stipulation which stated that there was no history as to Article VII. Allied at 9. The Arbitrator, says Allied, impermissibly disregarded the stipulation and relied on evidence of purported negotiations to support a critical conclusion and thus the Award must be vacated.

This complaint, like the previous objection, lacks substance. The Arbitrator, while interpreting Article XIII, simply observed that the language "in accordance with the agreement" had been negotiated

by the parties; this observation was given in support of his conclusion that Article XIII did not contravene his interpretation of Article VII. It was simply a statement of fact, the language *had* been negotiated by the parties before being inserted in the CBA. The contention that this language impermissibly interjected evidence of prior bargaining history into the Arbitrator's decision is an exaggeration of the Arbitrator's opinion.

### 3. *Section 1, Article VII*

■ Allied next asserts that the Arbitrator rewrote pertinent provisions of Article VII and Article XIII "to conform to his own notions of equity." Allied at 10. First, Allied objects to the Arbitrator's equation of "job" and "temporary assignments" in Article VII, Section 1. The Arbitrator, Allied says, did not construe the contract but rather wrote "job" out of the contract and substituted it with "temporary assignments" so as to justify his conclusion that Section 1 did not apply to the Grievant's reclassification.

The Court disagrees. Equating the word "job" in one sentence of a section with "temporary assignments" in the next sentence of that section cannot be considered disregard of the plain language of the contract. Rather, it was the Arbitrator's interpretation of the language of that section.

That interpretation, while perhaps not consonant with the treatment that this Court would give the same language, is at least plausible. As such, it is protected by the significant discretion accorded an arbitrator to interpret a contract. *See Stead Motors v. Machinists Lodge 1173*, 886 F.2d 1200, 1205 (9th Cir.1989); *American Postal Workers Union v. United States Postal Service*, 789 F.2d 1 (D.C.Cir.1986); *Boise Cascade Corp. v. United Steelworkers of America*, 588 F.2d 127 (5th Cir.), *cert. denied*, 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979).

That "job" and "temporary assignments" are juxtaposed in the two sentence section,

coupled with the fact that the following section uses the term "classification" as opposed to "job," indicates that the Arbitrator's interpretation had a solid foundation in the language and structure of the contract. Moreover, the Arbitrator relied on evidence submitted during the hearing that employees were sometimes asked to perform temporary tasks not associated with their normal duties. Award at 9.

### 4. *Section 2, Article VII*

■ The second alleged modification to Article VII concerns Article VII, Section 2. Of all the objections raised by Allied, this has the strongest claim to legitimacy.

The relevant language of the section reads as follows:

> If it is found necessary to transfer an employee from a higher rated classification to a lower rated classification because of a change in process or reduction in work requiring a lay off, the employee so transferred shall retain his present rate of pay for thirty (30) days after the date of the transfer and shall then be paid the rate of pay for the classification in which he is placed. If the transfer is for a temporary period only (rather than a lay off), the employee shall carry his old rate.

Allied interprets this language, quite reasonably, to mean that *if*, and only if, an employee is transferred as a result of a change in function or reduction in work, *then* he may benefit from the specific salary protections set forth in the provision.

The Arbitrator, however, read this language to mean that the company has the right to transfer employees *only* in the event of a change in process or a reduction in force.[3] According to Allied, the Arbitrator rewrote the section to read, in effect, "only if there is a change in process or reduction in force requiring a layoff may the employer transfer an employee from a higher to a lower rated classification." Allied at 12. This, says Allied, is in contra-

---

**3.** As it noted at oral argument, the Court finds the logic employed by the Arbitrator in interpreting this section to be strained at best. At worst, it is in clear derogation of fundamental principles of grammar and sentence structure.

vention of the plain language of the contract and, as such, is impermissible.

The correct interpretation of this section, according to Allied, is that it governs the manner in which an employee will be treated *if* that employee is transferred because of a change in process or a reduction in work. The language does not limit the conditions under which the company is *permitted* to transfer an employee.

The Arbitrator does not explain why he interpreted the CBA language as he did.[4] However, the Arbitrator's interpretation of the language does not stray from the language of the contract to a degree sufficient to overcome the bias against interfering with an arbitrator's award. In other words, although the Court thoroughly disagrees with the Arbitrator's reading of this provision, it cannot say that the Arbitrator was not "even arguably construing or applying the contract" when addressing this section. *Misco*, 108 S.Ct. at 371. Even though the Arbitrator's reading of this provision is strained, the wording of the section is ambiguous enough to permit the interpretation of the Arbitrator without finding that that interpretation was in contravention of the plain language of the contract.

### 5. Satisfactory Job Performance and Just Cause Demotion

The third and fourth alleged amendments concern statements made by the Arbitrator in the concluding paragraph of the Award, here quoted in full:

> While the Company argues that it has "the right to transfer, subject only to the wage payment and non-discrimination provisions" of the labor contract, it is clear grievant's permanent "transfer" from Warehouse Leader to Helper was a reclassification and under the facts here present amounted to a demotion without cause. To uphold the Company's action would render meaningless the negotiated wage scales set forth under Appendix A. The Company does not retain nor does Article XIII memorialize an inherent right to permanently reclassify employees from higher paying classifications in which they are satisfactorily performing to lower rated jobs.

Award at 12.

Allied objects to the imposition by the Arbitrator of what it terms a satisfactory performance test in the last sentence of the paragraph. As it is a test unstated in the contract, Allied says, it cannot be considered contractual interpretation, but rather is an impermissible addition to the contract. Allied at 13. In adding this test, the Arbitrator exceeded his authority and based his award upon his own ideas of how the contract should be read. Allied at 14.

Allied further objects to the Arbitrator's reference to the transfer as a "demotion without cause" in the first sentence of the above paragraph. By casting the case as a just cause demotion as opposed to a transfer, says Allied, the Arbitrator expanded his authority and prejudiced the company which was not prepared to present evidence as to the Grievant's work performance.[5] Award at 16–17.

Allied basically claims that the Arbitrator severely misconstrued the CBA by adding considerations of satisfactory performance and just cause demotion to what was only supposed to be an analysis of contractual language. However, Allied misinterprets the last paragraph. Reference to the satisfactory performance test and the just cause demotion were made in objection to

---

**4.** Later in the Award, the Arbitrator did state that if the Management could transfer an employee between job classifications at will, it would render meaningless the wage schedule negotiated by the Union and Company.

**5.** Allied complained that the Arbitrator's interpretation has effectively created a just cause standard in the CBA where none had existed prior to arbitration. At oral argument, the Court agreed that the Arbitrator's interpretation of the agreement was, to be generous, expansive, and further observed that had the CBA been somewhat more explicit and affirmatively given the employer an unambiguous right to effect downward transfers of employees, then the Court might agree that the Arbitrator ignored the plain language of the agreement. But, apparently, the employer did not negotiate for such a clear right, and this Court, although reluctantly, must enforce the Arbitrator's interpretation, strained though it is.

the company's claim that Article XIII gave it unfettered discretion to transfer an employee at will. Neither served as the basis for the Arbitrator's decision. Rather, they were used to support the Arbitrator's prior decision that Article VII, Section 2 limits transfers to two situations. As such, these disputed references are clearly within the Arbitrator's interpretive authority and do not present a reason for this Court to interfere with the Arbitrator's analysis.

Even if the Arbitrator had imposed a just cause standard this circuit's decisions in *Eberhard* and *Dixie Warehouse* stand for the proposition that, unless expressly limited, the arbitrator will have the authority to review and modify a penalty. Moreover, the power of management to transfer or demote employees, as set forth in the CBA, is not unbridled. Rather, it is constrained by the phrase "in accordance with the agreement." This phrase permitted the Arbitrator to interpret the CBA as imposing a just cause requirement for demotion and then to use that interpretation to condition management's right to transfer. While this Court makes no pronouncement on the wisdom of such a decision, it lacks the power to overturn it. As it noted at oral argument, the Court can only recommend that, in the future, the parties take greater care in drafting the language of their agreement.

## ATTORNEY FEES

The Union asks this Court to award it attorney fees. It cites *United Food & Commercial Workers, Local 400 v. Marval Poultry, Co.*, 876 F.2d 346, 351 (4th Cir.1989) and *International Assoc. of Machinists & Aerospace Workers v. Texas Steel, Co.*, 639 F.2d 279, 284 (5th Cir.1981) as support for its position. These cases draw a distinction between challenges to an arbitration award based on the fundamental issues of arbitrability or on whether an award "draws its essence" from the contract and those based on the intrinsic merits of the award. *Marval*, 876 F.2d at 351;

*Texas Steel*, 639 F.2d at 284. The former do not warrant an award of attorney fees while the latter do.

While this distinction is not of the utmost clarity, it seems that Allied's challenge may be properly characterized as belonging in the first category. Although some of Allied's challenges were arguably marginal, its claim that the Arbitrator failed to apply the plain language of the contract in Section 2 of Article VII has enough credence to remove it from the frivolous category. While the Court disagrees with several of Allied's claims, its arguments are not sufficiently off the mark to justify an award of attorney fees.

## CONCLUSION

Each of the objections raised by Allied involves an exercise of the Arbitrator's power to interpret the CBA. As such, each is protected from judicial interference. When the parties decided to resolve their dispute through the use of an arbitrator[6], they took their dispute out of the judicial arena. The Supreme Court and the lower courts have made it perfectly clear that the arbitrator's decision in such circumstances is entitled to great deference by the court. Should the parties be dissatisfied with an arbitrator's decision, the appropriate remedy is to choose another means of resolving future disputes. As stated by the District of Columbia Circuit:

> Thus, the parties may not seek relief from the courts for an alleged mistake of law by the arbitrator. They have agreed to be bound by the arbitrator's interpretation without regard to whether a judge would reach the same result if the matter were heard in court. The parties' remedy in such cases is the same remedy they possess whenever they are not satisfied with the arbitrator's performance of his or her job: negotiate a modification of the contract or hire a new arbitrator.

*American Postal Workers Union*, 789 F.2d at 6–7.

**6.** According to the Union, Allied chose Arbitrator Walt from a list of six possible arbitrators proposed by the Union.

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Union's Motion for Summary Judgment is GRANTED;

IT IS FURTHER ORDERED that the Union's Motion for Attorney Fees and Interest is DENIED;

IT IS FURTHER ORDERED that the Allied's Motion for Summary Judgment is DENIED.