**SOUTHERN COUNCIL OF INDUSTRIAL WORKERS, UNITED BROTHER-HOOD OF CARPENTERS & JOINERS OF AMERICA, AFL–CIO, and United Brotherhood of Carpenters Union, Local 2825,**

v.

**BRUCE HARDWOOD FLOORS.**

No. 3:91–0449.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 14, 1992.

Lynn Allen Agee, Susan Kay Bradley, Agee, Allen, Godwin, Morris & Laurenzi, Murfreesboro, Tenn., for plaintiffs.

Edward Bograd, Charlotte, N.C. and Harold W. McCleary, Jr., Waldrop, Breen, Bryant, Crews, Taylor & McLeary, Jackson, Tenn., for defendant.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court in the above styled action are the respective motions of the plaintiffs and defendant for summary

judgment. The parties are signatories to a collective bargaining agreement under which an employee of the defendant, Bruce Hardwood Floors (the Company), brought a grievance proceeding that eventually lead to arbitration. The plaintiffs, Southern Council of Industrial Workers, United Brotherhood of Carpenters & Joiners of America, AFL–CIO, and United Brotherhood of Carpenters Union, Local 2825 (the Unions), filed this suit on behalf of the employee to enforce the arbitrator's award in favor of the employee. The Company filed a cross-complaint seeking to vacate the award which alleged that, in ruling in favor of the employee, the arbitrator exceeded the authority granted to her under the collective bargaining agreement. For the reasons stated below, the Court finds that the arbitrator exceeded her authority under the collective bargaining agreement because her interpretation of the procedural due process aspects of the agreement's "just cause" language is not derived from the essence of the agreement. Thus, the Court grants summary judgment for the defendant and vacates the arbitrator's award.

## I. BACKGROUND

Lee A. Garrett was an employee of the defendant Company and his employment was covered by a collective bargaining agreement in effect presently and for all times material to this action.[1] Certain sections of that agreement provide for disciplinary actions and grievance procedures.

Section 1 of Article XXVI of that agreement states, inter alia, that the Company has "the right to maintain discipline and to discharge employees for *just cause.*" Def. Ex. 1 at 38 (emphasis added). Section 3 of Article XXVI provides in pertinent part:

> The Company may take action against an employee based upon conduct which warrants immediate discharge, or for other conduct, while less serious, which initially warrants less severe discipline.

(a) An *employee may be discharged immediately* without prior warning for the following or similar reasons:

. . . .

8. Being insubordinate or disobedient;

. . . .

18. Failure or refusal to do assigned work

. . . .

20. Leaving the plant during working time without the permission of the department supervisor. . . .

*Id.* at 39 (emphasis added).

Section 1 of Article XIII sets out a three-step grievance procedure for "[a]ny employee having a complaint concerning the interpretation or application of any provision of [the collective bargaining a]greement." *Id.* at 22. The first step requires a discussion of the grievance with the supervisor.[2] The second step entails a review of the grievance by the department superintendent and the plant manager. If the matter is not resolved satisfactorily in the first two steps, the third step mandates a meeting between the general manager, the union grievance committee and a representative of the aggrieved employee. *Id.* at 22–23. Finally, in the event of a still unsettled grievance, the parties may refer the matter to arbitration under article XIV of the collective bargaining agreement. *Id.* at 24.

Article XIV dictates that "[n]o arbitrator shall have the authority to add to, amend, or depart from the terms of this written agreement." *Id.* at 25.

On or about September 10, 1990, the Company discharged the employee, Lee A. Garrett, on the grounds that he was insubordinate, failed to do assigned work, and had left the plant during work time without permission. The employee pursued the grievance procedures outlined above and eventually his grievance was submitted for arbitration. After a hearing, the arbitrator determined that the discharge was substantively correct; but then went on to find

---

1. The collective bargaining agreement pertinent to this case covers the period of March 2, 1990 through February 26, 1993. Def.Ex. 1 at cover.

2. Throughout all these proceedings, the employee may represent himself or enlist the assistance of a union steward. *See* Def.Ex. 1 at 22.

that the grievant's discharge was without "just cause" because it lacked procedural due process. Pltf.Ex.A. at 17. Specifically, with regard to the substantive correctness of the discharge, the arbitrator found:

> While [the grievant's] conduct technically could fall within the language of several other rules, his single offense was to abandon work without completing his assignment. Grievant's failure to comply with this specific instruction constitutes failure or refusal to do assigned work within the meaning of Article XXVI of the Collective Bargaining Agreement.

*Id.* at 14. With regard to the procedural due process of the discharge, however, the arbitrator found that the "just cause" language carried procedural prerequisites to discharge as well as substantive ones. Specifically, the arbitrator opined:

> The purpose of th[e "just cause" procedural prerequisites] is to give the Grievant a full and fair opportunity to question his accuser, provide witnesses and evidence, and argue his case so that the ultimate decision is the product of thought and study, and is as fair as possible.... *The record fails to show that any explanation for his conduct was asked for or obtained before he was discharged. Management's failure to properly investigate the case was in violation of the just cause standards guaranteed to members of the bargaining unit in Articles I and XXVI.*

*Id.* at 17. In support of this reasoning, the arbitrator cited an arbitration decision from Louisiana. Additionally, to support her finding that the Company had failed to provide proper procedural due process under the "just cause" language, the arbitrator pointed out:

> There is a conflict of interest inherent in [a supervisor]'s assuming the roles of prosecutor, judge and witness. Where a supervisor takes on such multiple roles, there is a temptation for him or her to conclude the employee is guilty without adequate consideration of available evidence and without giving his arguments an attentive ear. The danger of unfairness is only removed when Management provides for the independent judgment of another person prior to the decision to discipline.
>
> Though acknowledging the dangers of allowing a witness to function as investigator, the Arbitrator is also aware that the realities of production pressures require reasonableness in resolving the tension between procedural protections and allocation of human resources within management. While having the same supervisor who reported an incident also investigate it invites a slanted analysis, due process is not denied unless some unfairness can be identified—such as refusal to interview witnesses, review pertinent evidence or listen to the employee's side.

*Id.* at 16–17 (emphasis added). The arbitrator concluded that although the discharge would be sustained, the lack of procedural due process warranted an award of "back pay calculated from [the grievant's] date of discharge through and including the day of hearing." *Id.* at 18.

## II. ANALYSIS

The Unions seek to enforce the arbitrator's award in favor of Garrett. The Company contends that since the arbitrator exceeded her authority as provided in the collective bargaining agreement, her award should be vacated.

The Supreme Court's most recent opinion touching on judicial review of labor arbitration decisions delineated the policy tensions inherent in the issue.

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.... The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... the

arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987) (citations omitted).

The Sixth Circuit, in order to guide lower courts in their determination of whether an arbitrator has exceeded her or his authority, has outlined the following indicia to determine whether an award draws its essence from the collective bargaining agreement:

> [T]here may be a departure from the essence of the agreement if "(1) an award *conflicts with express terms* of the collective bargaining agreement, (2) an award *imposes additional requirements that are not expressly provided* in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is *based on general considerations of fairness and equity* instead of the precise terms of the agreement...."

*Dobbs, Inc. v. Local No. 614, International Brotherhood of Teamsters,* 813 F.2d 85, 86 (6th Cir.1987) (emphasis added) (quoting *Cement Divisions, National Gypsum Co. v. United Steelworkers of America,* 793 F.2d 759, 766 (6th Cir.1986)); *see also Local 120 v. Brooks Foundry, Inc.,* 892 F.2d 1283, 1286 (6th Cir.1990) (a post–*Misco* decision applying the same standards). The court in *Dobbs* also noted that "The 'arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions.'" 813 F.2d at 1286 (quoting *Detroit Coil v. International Association of Machinists and Aerospace Workers, Lodge No. 82,* 594 F.2d 575, 579 (6th Cir.1979)). Other circuits recognize that, despite the strong policy toward deference to arbitration decisions, collective bargaining agreements often do not provide arbitrators with unfettered discretion. *See, e.g., Bruno's, Inc. v. United Food & Commercial Workers International,* 858 F.2d 1529, 1531 (11th Cir. 1988).

■ Applying the Sixth Circuit standards articulated in *Dobbs,* the Court holds that the arbitrator exceeded her authority and failed to adhere to the essence of the collective bargaining agreement. Several aspects of her reasoning indicate her departure from the essence of the agreement. To begin with, her finding that the "just cause" language meant that the Company was obligated to investigate the incident and to allow the employee an opportunity to give his side of the story before discharge imposes additional requirements that are not express terms of the collective bargaining agreement. The Sixth Circuit's observation that "the conduct of the arbitrator ... in reality constituted the addition of terms to a negotiated contract that was neither unclear nor incomplete" seems as appropriate here as it was in *Local 342, UAW v. T.R.W., Inc.,* 402 F.2d 727 (6th Cir.1968).

In addition, such a finding conflicts with the express terms of the agreement that allows the Company to discharge an employee immediately and without warning. If the parties had intended that both an investigation and opportunity for the employee to tell his or her side of the story ensue before discharge, they would not have used the "immediately" and "without warning" language. Any investigation would take time, and any opportunity to explain would necessitate notice. The arbitrator's implication of procedural prerequisites to discharge ignores the plain language of the agreement. *See Misco,* 108 S.Ct. at 371.

The Court reads the collective bargaining agreement as vesting with the company the

right to discharge an employee once it finds that an employee has conducted himself in one of the expressly listed fashions. Only afterward does the agreement provide the employee with procedural due process. The Court's reading is not merely another arguable interpretation or a review of a serious error by the arbitrator that would be insufficient to vacate the arbitrator's award under *Misco*. *Id.* Rather, the instant case fits the situation, "[w]hen an arbitral award creates unwarranted limitations on rights vested exclusively with one party, the arbitrator has exceeded his authority." *Dobbs*, 813 F.2d at 88 (citing *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154 (6th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983)).

■ Also, the arbitrator's extended discussion regarding the conflict of interests a supervisor might have in acting as prosecutor, judge and witness in making the discharge decision illustrates how the arbitrator's decision was based upon general considerations of fairness and equity instead of the precise terms of the agreement. The process that the employee received in this case, which included the three step grievance procedure after the discharge, the arbitration hearing and decision, and this Court's review, is exactly that to which the parties to the collective bargaining agreement assented. An arbitrator cannot add his or her own procedural prerequisites under the guise of "fundamental fairness" absent contractual authorization in the collective bargaining agreement. *T.R.W., Inc.*, 402 F.2d at 730.

■ In a case with strikingly similar collective bargaining agreement language,[3] the First Circuit held that "[t]he language of the agreement is unequivocal in that it establishes two *independent* justifications for dismissal: 1) just cause and 2) a list of offenses, including dishonesty, for which immediate discharge is appropriate." *Georgia–Pacific Corp. v. Local 27, United Paperworkers International Union*, 864 F.2d 940, 944–45 (1st Cir.1988). Further, the court stated that, under the language of the agreement, a finding of dishonesty established "just cause" per se and was an adequate ground for immediate dismissal. *Id.* at 945. Similarly, in the instant case, once the company determined that the employee had failed to do assigned work, the collective bargaining agreement gave the Company the right to discharge the employee.

■ The plaintiffs vigorously contend that, in interpreting the "just cause" provision, the arbitrator was interpreting an ambiguous term and thus her interpretation should be afforded deference as an arguable construction or serious error under *Misco*. Though the term "just cause" contains substantive ambiguity, that is to say the question of exactly what cause could constitute "just cause" is a matter of debate, the term does not contain any ambiguity, nor any meaning, which relates to the procedural due process required for discharge of an employee.

The plaintiffs argue that the Court should recognize an ambiguity with respect to procedural due process in the expression "just cause" as the Eighth Circuit has in *Chauffeurs Local Union 878 v. Coca–Cola Bottling Company*, 613 F.2d 716, 719–20 (8th Cir.1980) and *Kewanee Machinery v. Local Union No. 21, International Brotherhood of Teamsters*, 593 F.2d 314, 317–18 (8th Cir.1979). Those decisions pointed out that arbitrators had developed an interpretation of "just cause" that included not only substantive but also procedural aspects and, therefore, held that, while the court's interpretation of "just cause" may differ from the arbitrator's, such disagree-

---

**3.** Specifically, the collective bargaining agreement in *Georgia–Pacific* provided:

> *The Arbitrator shall not modify, change or add to the provisions of this Agreement,* but shall interpret this Agreement and adjust grievances in accordance with the provisions thereof.
> ....

B. Causes for discharge
   1. Any employee may be discharged for *just cause.* Without limiting the generality of the foregoing some of the causes for *immediate* discharge are:
      ....
      (5) dishonesty
864 F.2d at 942 (emphasis added).

ment is irrelevant to a court's review of the arbitrator's decision. *Chauffeurs,* 613 F.2d at 720; *Kewanee,* 593 F.2d at 317 n. 3. The Court believes, however, in these cases, the Eighth Circuit went too far in its deference to the arbitrators.

The First Circuit, in *Georgia–Pacific,* aptly stated:

> Although labor arbitration is the preferred method of settling labor-management disputes and is encouraged by Congressional policy, 29 U.S.C. § 173(d), it is wholly a voluntary decision of private parties, grounded in their will as expressed in the collective bargaining agreement. . . . Therefore, the paramount point to be remembered in labor arbitration is that the power and authority of an arbitrator is totally derived from the collective bargaining agreement and that he violates his obligation to the parties if he substitutes "his own brand of industrial justice" for what has been agreed to by the parties in that contract. *United Steelworkers v. Enterprise Wheel & Car,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

864 F.2d at 944. The arbitrators in *Chauffeurs* and *Kewanee,* as well as the arbitrator in the instant action, substituted their own brand of industrial justice for what had been agreed to between the unions and the companies. Had the arbitrators merely interpreted the ambiguity in "just cause," for example, by stating that returning thirty seconds late from a mid-day break was not "just cause" for discharge, the arbitrators would have been acting within their contractual authority. ·Essentially, the arbitrators in the Eighth Circuit cases and the instant case pulled a procedural rabbit out of a substantive hat. Furthermore, allowing arbitrators to develop contractual interpretations which have no root in the contract's language undermines the ability of parties with equal bargaining power, such as are before us, to contract with the preciseness of plain language and to conform their conduct to their contract.

Of course, the arbitrator had no ill-will in awarding back pay to the employee. She sought only to do what she believed was right, but did so through the exercise of an equitable power that was not authorized by and did not derive from the essence of the collective bargaining agreement. Therefore, the Court vacates her award.

## III. CONCLUSION

For the reasons stated above, the Court hereby DENIES the plaintiffs' motion for summary judgment, GRANTS the defendant's motion for summary judgment, and therefore VACATES the arbitrator's award in favor of Lee A. Garrett. An order consistent with the reasoning and results of this memorandum will be entered simultaneously.