**BRUCE HARDWOOD FLOORS, A DIVISION OF TRIANGLE PACIFIC CORPORATION, Plaintiff,**

v.

**SOUTHERN COUNCIL OF INDUSTRIAL WORKERS, UNITED BROTHERHOOD of CARPENTERS AND JOINERS of AMERICA, AFL–CIO, LOCAL UNION 2509, Defendant.**

No. 92–1109.

United States District Court,
W.D. Tennessee, E.D.

Oct. 23, 1992.

See also 784 F.Supp. 1345.

Edward Bograd, Blair, Conaway, Bograd & Martin, Charlotte, N.C., and Harold W. McLeary, Jr., Jackson, Tenn., for plaintiff.

John L. Quinn and George N. Davies, Longshore, Nakamura, & Quinn, Birmingham, Ala., for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TODD, District Judge.

Plaintiff Bruce Hardwood Floors ("Company") brought this action pursuant to section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185 (1988), seeking to vacate an arbitrator's award in a grievance submitted to arbitration by Defendant Southern Council of Industrial Workers, United Brotherhood of Carpenters and Joiners of America ("Union"), the authorized bargaining representative for the grievant, Mary Scarbrough. The Union filed a counterclaim seeking an injunction ordering the Company to abide by the arbitrator's award, and requesting back pay, compensatory damages, and punitive damages. Both parties have filed motions for summary judgment, and each has responded to the other's motion. For the reasons set forth below, the court DENIES the Union's motion for summary judgment and GRANTS the Company's motion for summary judgment.

### I. STANDARD FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the moving party has the burden of showing the " 'absence of a genuine issue of material fact' as to an essential element of the nonmovant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *see* Fed.R.Civ.P. 56(c). In the present case, the parties do not dispute the facts. Rather, it is the legal significance of the facts that lies at the heart of the present dispute. Because there is no issue to be decided by the trier of fact, this action is properly resolved by summary judgment.

### II. BACKGROUND

The grievant, Mary Scarbrough ("Grievant"), was employed by the Company at its

facility in Jackson, Tennessee. The Union is the recognized bargaining representative for the employees at the Jackson facility, and the Union and the Company are parties to a Collective Bargaining Agreement ("CBA"), which covers all times relevant to this matter.[1]

Article I, section 2 of the CBA provides that "[t]he right to ... discharge for just cause ... rest[s] solely and exclusively with the Company." (Compl.Ex. A at 3.) Article XXVI, section 1 of the CBA vests the Company with "the right to discipline and discharge employees for just cause." *Id.* at 38. In addition to these general "just cause" discharge provisions, article XXVI, section 3(a) of the CBA sets forth a list of specific offenses for which "[a]n employee may be discharged immediately without prior warning." *Id.* at 39. The grounds for immediate discharge include "6. Sleeping on duty." *Id.*

Article XIII of the CBA establishes a three-step grievance procedure for employees who have complaints concerning the Company's interpretation and application of the CBA. *Id.* at 22–24. Article XIV, section 1 provides that "if the grievance is not settled under the provisions of the grievance procedure set forth in Article XIII, the aggrieved party (the Union or the Company) may refer the matter to arbitration." *Id.* at 24. Section 3 of article XIV provides that "[n]o arbitrator shall have authority to add to, amend or depart from the terms of this written Agreement." *Id.* at 25.

On November 11, 1991, the Company discharged the Grievant for sleeping on the job. After the grievance procedure provided in the CBA failed to resolve the dispute, the parties referred the matter to arbitration. At the hearing, each party submitted its own version of the issue to be decided. The Company presented the issue as a very narrow factual inquiry—"whether a preponderance of the evidence establishe[d] that the grievant was sleeping on duty." (Arbitration Opinion & Award, Compl.Ex. B at 3.) The Union offered a broader issue— "whether or not the grievant was discharged for just cause." *Id.* The Arbitrator adopted the Union's characterization of the issue submitted. *Id.*

After the hearing, the Arbitrator concluded that the Grievant had been sleeping on the job, *Id.* at 8, and the Union does not dispute this factual determination. The Arbitrator decided, however, that, because the Company had failed to consider certain mitigating factors,[2] the Grievant's discharge did not meet the just cause standard. *Id.* at 11. Therefore, the Arbitrator modified the discipline imposed for the Grievant's offense from discharge to a ten (10) day suspension, and awarded reinstatement and back pay.

The Company brought this action to vacate the Arbitrator's award on the grounds that the Arbitrator exceeded his authority under the CBA. (Compl.paras. 17–19.) Specifically, the Company contends, first, that the Arbitrator improperly adopted the Union's proposed issue, *Id.* para. 15, and, second, that the CBA provision enumerating the offenses resulting in immediate discharge limited the Arbitrator's authority to adopt other forms of discipline for those offenses. *Id.* para. 19.

### III. ANALYSIS

#### A. The Arbitrator's Framing of the Issue

 The Company first challenges the arbitration award on the grounds that the Company did not accept the issue as framed by the Arbitrator—"whether the grievant was discharged for just cause." (Compl. para. 15.) At the hearing, the Company asserted that the issue submitted

---

1. The parties entered into the Collective Bargaining Agreement on March 2, 1990, and the agreement remains in effect until February 26, 1993. (Compl.Ex. A at cover.)

2. The factors identified by the arbitrator include the lack of any intent on the part of the Grievant to commit the offense, the fact that the Grievant's offense was discovered by someone other than an experienced line supervisor, the fact that the employee that discovered the offense is the son of one of the Employer's board of directors, the minimal degree of the offense, the Grievant's years of service, and the Grievant's disciplinary record. (Arbitration Opinion & Award, Compl.Ex. B at 10–11.)

was "whether a preponderance of the evidence establishe[d] that the grievant was sleeping on duty." *Id.* This dispute raises the issue of the scope of the matter submitted to arbitration.

The Supreme Court of the United States has adopted a deferential standard of judicial review of arbitration awards, holding that a court cannot overturn an arbitrator's decision "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). In the context of determining whether an arbitrator had properly held that a specific issue had been submitted to arbitration, the Sixth Circuit Court of Appeals has stated that "the extraordinary deference given to an arbitrator's ultimate decision on the merits applies equally to an arbitrator's threshold decision that the parties have indeed submitted a particular issue for arbitration." *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328, 335 (6th Cir.1985), *quoted in Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 765 (6th Cir.1986); *see also Johnston Boiler Co. v. Local Lodge No. 893, Int'l Bhd. of Boilermakers*, 753 F.2d 40, 43 (6th Cir.1985).

In the present case, the CBA does not address the issue of the scope of the matter submitted to arbitration. The only provision pertinent to this inquiry is section 1 of article XIV, which provides that, "if the grievance is not settled under the provisions of the grievance procedure ..., the aggrieved party ... may refer the *matter* to arbitration." (Compl.Ex. A at 24) (emphasis added). Absent language limiting the scope of the word "matter", the agreement obviously contemplates that the parties will submit the entire "grievance" to arbitration.

In the present case, the Arbitrator's determination that the issue presented was whether the Grievant had been discharged for just cause was "at least arguably" interpreting the contract. Under the deferential standard adopted by the Supreme Court and applied by the Sixth Circuit to

arbitrators' decisions regarding the scope of the issues submitted, the court cannot overturn this determination. Therefore, pursuant to the Arbitrator's decision, the court finds that the issue to be decided by the arbitration was whether the Grievant had been discharged for just cause.

## B. The Arbitrator's Departure from Established Disciplinary Provisions

The determination of the scope of the issue presented to arbitration does not end this court's inquiry into the validity of the arbitration award. The Company challenges the Arbitrator's decision to abrogate the Grievant's discharge and, instead, penalize the Grievant with a ten (10) day disciplinary suspension. (Compl. para. 19.) The Company asserts that the established disciplinary provisions of article XXVI, section 3(a) of the CBA limited the Arbitrator's authority to determine the appropriate discipline for the Grievant's offense. *Id.*

■ As noted above, arbitrators' decisions receive great deference from reviewing courts. *See, e.g., United Paperworkers' Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). In *Misco*, however, the Supreme Court delineated the limits on the deference afforded arbitrators' determinations:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.... [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice.

*Id.* (citation omitted).

The Sixth Circuit has identified factors that indicate whether an arbitration award draws it essence from the agreement.

[T]here may be a departure from the essence of the agreement if "(1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement."

*Dobbs, Inc. v. Local 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987) (quoting *Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 766 (6th Cir.1986) (citations omitted)), *quoted in Local 120, Int'l Molders v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286 (6th Cir.1990). In addition, although the arbitrator, when performing his function of interpreting and applying the collective bargaining agreement, is free to construe ambiguous language, the arbitrator cannot " 'disregard or modify plain and unambiguous provisions.' " *Dobbs*, 813 F.2d at 86 (quoting *Detroit Coil v. International Ass'n of Machinists, Lodge No. 82*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979)).

■ *Southern Council of Industrial Workers v. Bruce Hardwood Floors*, 784 F.Supp. 1345 (M.D. Tenn.1992), addressed a dispute concerning the same parties and the same collective bargaining agreement involved in the present action. In *Bruce Hardwood*, the Company had discharged an employee for failing to do his assigned work, conduct that constituted one of the grounds for immediate discharge under article XXVI, section 3 of the CBA. *Id.* at 1346. The arbitrator found that the employee's conduct violated the disciplinary provision. The arbitrator held, however, that the "just cause" language in the CBA required the Company to provide certain procedures prior to discharge.[3]

The United States District Court for the Middle District of Tennessee, applying the standard promulgated in *Misco* and defined in *Dobbs*, held that the arbitrator had "exceeded her authority and failed to adhere to the essence of the collective bargaining agreement." *Id.* at 1348. The arbitrator's imposition of procedural prerequisites to discharge "ignored the plain language" of the CBA, created "unwarranted limitations on rights vested exclusively" with the Company, and reflected "general considerations of fairness and equity rather than the precise terms of the agreement." *Id.* The District Court vacated the arbitrator's award, concluding that, "once the company determined that the employee had failed to do the assigned work, the collective bargaining agreement gave the company the right to discharge the employee." *Id.*

The present case is no different. The CBA allows the Company to immediately discharge any employee for sleeping on duty. (Compl.Ex. A., art. XXVI, § 3(a).) The CBA does not require the Company to consider mitigating factors before discharging an employee for violating this provision.[4] Rather, the CBA vests the Company with the right to discharge an employee once it determines that the employee was sleeping on duty. The arbitrator exceeded his authority by "creat[ing] unwarranted limitations on [a right] vested

---

**3.** The arbitrator held that the Company's failure to ask the employee for an explanation or to properly investigate the case violated the just cause standards. *Southern Council of Industrial Workers v. Bruce Hardwood Floors*, 784 F.Supp. 1345, 1346–48 (M.D. Tenn.1992).

**4.** Article XXVI, section 2 of the CBA provides that, "[i]n applying formal discipline or reprimand, disciplinary layoff or discharge, the Company, taking into consideration appropriate mitigating or aggravating circumstances, will apply such discipline in a fair and equal manner to all offenders." (Compl.Ex. A at 38.) This provi-

sion, however, merely requires the Company to discipline offenders even-handedly. In the present case, the Union does not allege that the Company has failed to do so. In fact, the Arbitrator noted that "under the work rules, the offense of sleeping on the job has been consistently enforced by discharge. Discharge is and has been the only penalty for sleeping on the job." (Arbitration Opinion & Award, Compl.Ex. B at 4.) By discharging the Grievant for sleeping on duty, the Company applied discipline "in a fair and equal manner."

exclusively with [the Company]." *Dobbs*, 813 F.2d at 88. The arbitrator's ruling requiring the Company to consider mitigating factors prior to discharging the Grievant for sleeping on duty " 'conflicts with the express terms of the collective bargaining agreement, ... and imposes additional requirements that are not expressly provided in the agreement.' " *Dobbs*, 813 F.2d at 86 (quoting *Cement Divs.*, 793 F.2d at 766 (citations omitted)). As in *Bruce Hardwood*, "[t]he Sixth Circuit's observation that 'the conduct of the arbitrator .... in reality constituted the addition of terms to a negotiated agreement that was neither unclear nor incomplete' seems as appropriate here as it was in *Local 342, UAW v. T.R.W., Inc.*, 402 F.2d 727[, 730] (6th Cir. 1968)." *Bruce Hardwood*, at 1348.

In addition, the Arbitrator's reliance on the Company's failure to consider factors such as the lack of any intent on the part of the Grievant to commit the offense, the fact that the Grievant's offense was discovered by someone other than an experienced line supervisor, the fact that the employee that discovered the offense is the son of one of the Employer's board of directors, the minimal degree of the offense, the Grievant's years of service, and the Grievant's disciplinary record, (Compl.Ex. A at 10–11), demonstrates that the Arbitrator based the award on " 'general considerations of fairness and equity instead of the precise terms of the agreement.' " *Dobbs*, 813 F.2d at 86 (quoting *Cement Divs.*, 793 F.2d at 766 (citations omitted)). As discussed above, the CBA does not require the Company to consider such factors prior to discharging an employee for engaging in conduct prohibited by article XXVI, section 3(a) of the CBA.

The issue presented for arbitration was whether the Grievant had been discharged for just cause. The Arbitrator held that, by not considering the factors identified in the award, the Grievant's discharge failed to meet the just cause standard. (Compl.Ex. A at 11.) The Arbitrator, however, exceeded his authority by imposing these additional requirements on the Company's right to discharge an employee under article XXVI, section 3(a) of the CBA.

Absent the provision enumerating the specific offenses giving rise to immediate discharge, the Arbitrator's ruling might be a proper interpretation of the "just cause" language in the CBA. However, by including this provision, the CBA "establishes two *independent* justifications for dismissal: 1) just cause and 2) a list of offenses ... for which immediate discharge is appropriate.... [O]nce [a violation of a listed offense] is established, no further showing is required. In essence, [a violation of a listed offense], as a ground for immediate discharge, is *per se* just cause." *Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 944–45 (1st Cir.1988); *see S.D. Warren Co. v. United Paperworkers, Int'l Union, Local 1069*, 845 F.2d 3, 8 (1st Cir.1988) (In a case involving similar contract language, the court stated that "the plain language of the contract ... removes from the arbitrator the authority to determine a remedy once she concludes that a certain rule has been breached.")

## IV. CONCLUSION

In the present case, by including section 3(a) in article XXVI of the CBA, the Company and the Union agreed that the listed offenses constituted *per se* just cause. The CBA vests the Company with the right to immediately discharge any employee found to have engaged in conduct proscribed by this provision. Although the issue presented to arbitration was whether the Grievant had been discharged for just cause, the Arbitrator's determination that the Grievant had been sleeping on duty ended the just cause inquiry. By imposing additional requirements on the Company's right to discharge an employee for violating section 3(a) of article XXVI, the arbitration award "reflects the [A]rbitrator's own notions of industrial justice" and does not "draw its essence" from the CBA. *Misco*, 484 U.S. at 38, 108 S.Ct. at 371. Therefore, the Arbitrator exceeded his authority under the CBA, and the award must be vacated.

On the basis of the foregoing, the court DENIES the Union's motion for summary judgment, GRANTS the Company's motion

for summary judgment, and, therefore, VACATES the arbitration award in favor of Mary Scarbrough.

IT IS SO ORDERED.