**BRUCE HARDWOOD FLOORS,**
**Plaintiff–Appellee,**

v.

**SOUTHERN COUNCIL OF INDUSTRIAL WORKERS,** affiliated with United **Brotherhood of Carpenters & Joiners of America, AFL–CIO, and its Local Union 2509, Defendant–Appellant.**

**No. 92–6495.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1993.

Decided Nov. 5, 1993.

Edward Bograd (argued and briefed), Blair, Conaway, Bograd & Martin, Charlotte, NC and Harold W. McLeary, Jr., Waldrop & Hall, Jackson, TN, for plaintiff-appellee.

George N. Davies and John L. Quinn (argued and briefed), Longshore, Nakamura & Quinn, Birmingham, AL, for defendant-appellant.

Before: MARTIN and JONES, Circuit Judges, and DEMASCIO, Senior District Judge.*

BOYCE F. MARTIN, JR., Circuit Judge.

■ This case involves judicial review of a grievance arbitration. The Southern Council of Industrial Workers appeals the district court's denial of its motion for summary judgment and grant of Bruce Hardwood Floors' motion for summary judgment, which vacated the arbitrator's award. In making this ruling, the district court determined that the arbitrator exceeded the terms of the negotiated contract. 804 F.Supp. 1039. As we conclude the arbitrator did not exceed the terms of the negotiated contract, we reverse.

In November 1991, Mary Scarbrough was employed at the Bruce Hardwood Floors facility near Jackson, Tennessee. On November 11, the Company discharged Scarbrough for sleeping on the job. The Southern Coun-

cil of Industrial Workers, United Brotherhood of Carpenters and Joiners of America, was at that time, and remains, the authorized bargaining representative for the facility's employees, including Scarbrough. The Union and the Company are parties to a collective bargaining agreement, which covers all times relevant to this matter.

Pursuant to the management rights provisions of Article I, section 2 of the agreement, the Company retains the exclusive right to discharge employees for "just cause." Section 1 of Article XXVI, the article on disciplinary action, provides that the Company "has the right to discipline and discharge employees for just cause." Section 2 of the same article mandates that "[i]n applying formal discipline ... or discharge, the Company, taking into consideration appropriate mitigating or aggravating circumstances, will apply such discipline in a fair and equal manner to all offenders." Section 3 is divided into a list of reasons for which an "employee may be discharged immediately" (subsection (a), which includes "[s]leeping on duty") and a list of reasons for which "an employee will be subject to progressive discipline" (subsection (b)).

Article XIII establishes a three-step grievance procedure for employees who have complaints concerning the interpretation or application of any provision of the agreement. Article XIV, subsequently, provides for arbitration in the event that an employee's grievance is not settled pursuant to Article XIII. Section 2 of Article XIV states that "[t]he written decision of the arbitrator shall be final and binding on all parties." Section 3 of the same article provides that "[n]o arbitrator shall have authority to add to, amend or depart from the terms of this written Agreement."

Following her discharge for sleeping on duty, Scarbrough and the Union filed a grievance under the provisions of Article XIII. After this procedure failed to resolve their dispute, the parties submitted the matter to arbitration. The Company presented the is-

* The Honorable Robert E. DeMascio, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

sue to be arbitrated as whether a preponderance of the evidence established that Scarbrough was sleeping on duty. The Union, in turn, framed the issue as whether the Company had discharged Scarbrough for just cause. The arbitrator adopted the Union's characterization of the issue to be resolved.

In reaching his decision, the arbitrator addressed whether Scarbrough was sleeping, and, if so, whether this constituted just cause for her termination. First, although he expressed doubt that she slept for "more than a minute or two," he concluded that Scarbrough did in fact fall asleep at her work station. Because the Company failed to consider certain mitigating factors, however, the arbitrator ruled that Scarbrough's discharge did not meet the "just cause" standard. These mitigating factors included: (1) Scarbrough's lack of intent to commit the offense; (2) the minimal degree of the offense; (3) the fact that Scarbrough's offense was discovered by someone other than an experienced supervisor; (4) the fact that the employee who discovered the offense was the son of a member of the Company's board of directors; and (5) Scarbrough's eight years of service and "praiseworthy work and disciplinary record." The Company, the arbitrator explained, erred in treating Scarbrough's offense no differently than a prior incident in which the Company discharged an employee who had built himself a shack for the purpose of hiding out to sleep. Accordingly, the arbitrator modified the disciplinary action against Scarbrough from discharge to a ten-day suspension, and ordered the Company to reinstate her with back pay.

The Company then brought this action in district court, pursuant to section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185 (1988), seeking to vacate the arbitrator's award. The Union filed a counterclaim seeking, in part, an injunction ordering the Company to abide by the arbitrator's ruling. Both parties moved for summary judgment. The district court granted summary judgment in favor of the Company.

The district court first noted the Supreme Court's deferential standard of judicial review of arbitration awards, and this Court's holding that the same extraordinary deference applies to the review of an arbitrator's threshold decision that a specific issue has been submitted to arbitration. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328, 335 (6th Cir.1985). In light of this precedent, the court found that the arbitrator had correctly framed the issue to be arbitrated as whether the Company had discharged Scarbrough for just cause. The court, however, vacated the arbitration award on the grounds that it was not "drawn from the essence" of the agreement between the Union and the Company, and thus violated even the deferential standard established in *Misco*. *See Misco*, 484 U.S. at 38, 108 S.Ct. at 370–71; *see also Dobbs, Inc. v. Local 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987) (quoting *Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 766 (6th Cir.1986) (citations omitted)) (identifying factors that indicate whether an arbitration award draws its essence from the labor agreement).

The court reasoned that the instant case was no different from *Southern Council of Industrial Workers v. Bruce Hardwood Floors*, 784 F.Supp. 1345 (M.D.Tenn.1992), which involved the same litigants and the same collective bargaining agreement. In *Bruce Hardwood*, the Company discharged an employee for being insubordinate, failing to complete assigned work, and leaving the plant during work time without permission. *Id.* at 1346. All of these are reasons for which the Company may immediately discharge an employee under Article XXVI, section 3(a). After a hearing, an arbitrator ruled that the employee had engaged in the alleged conduct, but that his discharge was without just cause because it lacked procedural due process. *Id.* at 1347. Applying the standard promulgated in *Misco* and further defined in *Dobbs*, the district court held that the arbitrator had "exceeded her authority and failed to adhere to the essence of the collective bargaining agreement," and vacated the arbitration award. *Bruce Hardwood*, 784 F.Supp. at 1348. The court found that although the question of exactly what cause

constitutes "just cause" is a matter of debate, the agreement clearly provided that once the Company determined that an employee had failed to do assigned work, the Company could discharge that employee without any further procedural safeguards. *Id.* at 1349.

The district court below cited with approval the conclusion reached in *Bruce Hardwood* that the collective bargaining agreement establishes two independent grounds for dismissal: 1) just cause and 2) a list of offenses, enumerated in Article XXVI, section 3(a), for which immediate discharge is appropriate. As Scarbrough's sleeping on duty is one of these listed offenses, like the employee's failure to do assigned work in *Bruce Hardwood,* the court reasoned that Scarbrough's actions constituted *per se* just cause. Thus, once the Company established that Scarbrough had committed the offense, it necessarily established just cause for her dismissal. The arbitrator's ruling requiring the Company to consider mitigating factors before discharging Scarbrough, the district court held, conflicted with the express terms of the agreement. According to the court, the arbitrator's reliance on these factors demonstrated that he erroneously based his award on "general considerations of fairness and equity rather than the precise terms of the agreement." *Dobbs,* 813 F.2d at 86. We disagree.

■ As we do in other cases in which the district court grants summary judgment, "we review a grant of summary judgment in labor arbitration cases *de novo.*" *Monroe Auto Equipment v. UAW, Local 878,* 981 F.2d 261 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2396, 124 L.Ed.2d 298 (1993). In *Misco,* 484 U.S. at 37–38, 108 S.Ct. at 370–371, the Supreme Court explained the limited scope of judicial review of arbitration awards:

> Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject the award on the ground that the arbitrator misread the contract.

Thus, "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.* at 38, 108 S.Ct. at 371. Even if a court is convinced that an arbitrator has committed serious error, therefore, it may not overturn the arbitration award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.*

This Court has noted, in turn, that, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer–Stevens Co. v. United Steelworkers of Am., AFL–CIO, Dist. 27, Sub–Dist. 5,* 913 F.2d 1166, 1169 (6th Cir.1990). As to the rationale behind such an approach, we have also stated that, "[t]he purpose of this limited scope of review is to promote the finality of arbitration ... [, which is] but one part of a broader goal of encouraging informal, i.e., non-judicial, resolution of labor disputes." *Bakers Union Factory No. 326 v. ITT Continental Baking Co., Inc.,* 749 F.2d 350, 353 (6th Cir.1984). With this standard of profound deference in mind, finally, we note that this Court has also established the following guidelines:

> [T]here *may* be a departure from the essence of the agreement if "(1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement."

*Dobbs,* 813 F.2d at 86 (emphasis added) (quoting *Nat'l Gypsum,* 793 F.2d at 766).

In this case, the Company and the Union agreed to submit unresolved employee complaints such as Scarbrough's, regarding the interpretation or application of any provision of the collective bargaining agreement, to arbitration. The arbitrator, by implication, interpreted Article XXVI, the disciplinary actions provision, as requiring him to determine whether the Company had just cause to discharge Scarbrough. Further, he understood section 2 of the article to modify section 3. As a result, the arbitrator concluded that even in those cases in which an employee has committed an offense listed in section 3(a) for which he or she may be immediately discharged, the Company must, taking into consideration appropriate mitigating and aggravating circumstances, apply discipline in a fair and equal manner to all offenders. Accordingly, because he concluded that the Company had not properly considered relevant mitigating factors, the arbitrator ruled that Scarbrough's discharge was without just cause.

■ As we review the contract and the arbitration opinion, the question we thus face is whether "the language of the contract at hand is sufficiently clear so as to deny the arbitrator the authority to interpret the agreement as he did." *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890, 891 (6th Cir.1989). In *Eberhard,* we concluded that an agreement that provided both that the right to discharge was within the sole discretion of the employer and that the employer could not discharge a non-probationary employee without just cause did not preclude an arbitrator's review of the sanction imposed by the employer. *Eberhard,* 868 F.2d at 892. Similarly, in *Dixie Warehouse and Cartage v. General Drivers,* 898 F.2d 507 (6th Cir.1990), we rejected the employer's contention that an arbitrator who reinstated an employee ignored the plain text of the collective bargaining agreement. As in the instant matter, the arbitrator in *Dixie Warehouse* found that the employee had violated a work rule. We distinguished the situation in *Dixie Warehouse,* however, from an earlier case in which we found that an arbitrator who reinstated an employee under similar circumstances had ignored the plain text of the agreement, on the grounds that the agreement in the earlier case had provided that violation of the work rule at issue " 'shall constitute cause for dismissal.' " *Id.* at 511 (citing *International Bhd. of Firemen and Oilers, Local No. 935–B v. Nestle Co.,* 630 F.2d 474, 475 (6th Cir.1980)). In *Dixie Warehouse,* violation of the work rule at issue subjected the employee to either "discharge or suspension." *Id.* The existence of alternative penalties, we concluded, authorized the arbitrator to review the employer's decision to discharge the employee. *Id.*

■ Here, Article XXVI, section 3(a) states only that an employee "may" be discharged for committing the enumerated offenses. Moreover, section 1 vests the Company with the right "to *discipline* and discharge employees for just cause." (Emphasis added). We find that these clauses, which provide for potential alternative remedies, coupled with the directive in section 2 that the company take into consideration "appropriate mitigating or aggravating circumstances" in applying formal discipline, created sufficient basis for the arbitrator to conclude that he had the authority to review the penalty imposed. The arbitrator's award thus was rationally derived from the terms of the agreement and not simply based on general considerations of fairness and equity. *See Dobbs,* 813 F.2d at 86. The award, moreover, did not conflict with the express terms of the agreement, and did not impose additional requirements not expressly provided in the agreement. *See id.* Whether the arbitrator's reading of the agreement was strained or even seriously flawed, and whether the district court's *per se* just cause analysis is more plausible, is irrelevant. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71. The arbitrator arguably construed and applied the agreement, and this is precisely what the parties bargained for him to do.

We further hold that *Southern Council of Industrial Workers v. Bruce Hardwood Floors,* 784 F.Supp. 1345 (M.D.Tenn.1992) was wrongly decided to the extent it interpreted the collective bargaining agreement at issue to establish independent just cause and *per se* just cause grounds for dismissal. *Bruce Hardwood* is distinguishable from the

matter before us today, however, in that the former involved an arbitrator's decision that the "just cause" language obligated the Company "to investigate the incident and to allow the employee to give his side of the story before discharge." *Bruce Hardwood*, 784 F.Supp. at 1348–49. Here, the arbitrator interpreted the agreement only to require the Company to inquire whether a certain offense, in light of the circumstances, met the substantive requirements of just cause for discharge. *See id.* at 1349 (noting that the term "just cause" contains substantive ambiguity). Requiring a formal investigation and hearing before discharge, when these procedural safeguards are not specifically provided for in the agreement, may well ignore the plain language of the contract. Requiring a company to consider the distinction between an employee who builds a shack for the purpose of hiding out to sleep and an employee with an unblemished eight-year record who nods off for a few moments at her work station does not.

For the foregoing reasons, the judgment of the district court is reversed.