EXXON CORPORATION, Plaintiff,

v.

EXXON EMPLOYEES' FEDERATION OF TEXAS, Defendant.

Civ. A. No. 3:93–CV–2233–R.

United States District Court,
N.D. Texas,
Dallas Division.

July 27, 1994.

Douglas B. Neagli, Exxon Co., U.S.A., Houston, TX, David M. Bates, Exxon Corp., Irving, TX, for plaintiff.

David Van Os, Van Os Deats Rubinett & Owen, Austin, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Presently before the Court are the parties Cross–Motions for Summary Judgment. Both Exxon Corporation ("the Company") and Exxon Employees' Federation of Texas ("the Union") stipulate that no genuine question of material fact exists and agree that the dispute centers around a purely legal question. The sole issue for this Court's determination is whether the arbitrator exceeded his scope of authority when he found that Coo-

1. *Arbitrator's Opinion,* at page 2.

per had committed a posted offense, but, declined to uphold the issued penalty based on due process considerations unilaterally factored into the relevant "just cause" analysis. For the reasons set forth below, this Court is of the opinion that the arbitrator DID exceed his authority and hereby GRANTS Plaintiff's Motion for Summary Judgment. In accordance with this finding, Defendant's Motion for Summary Judgment should be, and hereby is DENIED, and the arbitrator's award VACATED.

### Background

Jack Cooper, a Driver for Plaintiff corporation, suffered a work-related injury to his arm on November 21, 1991. Mr. Cooper's injury required that he be placed on light duty to accommodate his limitations. In connection with this injury and the subsequent restrictions placed on Cooper, the Company initiated a full scale surveillance of Cooper to substantiate his initial and ensuing complaints.

The result of this surveillance (and apparently some fortuitous admissions by Cooper and/or purported friends of Cooper) was an accumulation of evidence tending to show that Cooper had lied on at least one occasion to the Company in violation of the collective bargaining agreement's "posted offenses" which provides for termination *without notice.* In accordance with this provision, the Company terminated Cooper. Cooper unsuccessfully exhausted his internal grievance privileges and thereafter sought arbitration.

The sole issue submitted to the arbitrator was as follows:

*Did the Company have just cause to discharge the grievant, Jack R. Cooper? If not, what is the appropriate remedy?* [1]

In a thorough, though poorly reasoned, fifty-seven (57) page opinion the arbitrator, J. Earl Williams, ultimately found that "[t]here was not just cause for the termination of the grievant." [2] In reaching this decision, the arbitrator undertook a tangential analysis to determine the satisfaction of what he considered to be Cooper's due process entitlement.

2. *Arbitrator's Opinion,* at page 57.

After essentially determining that on more than one occasion Cooper had committed acts which qualified for termination without notice, the arbitrator went on to find that "[i]n the subject case, due process violations, standing alone, are serious enough to warrant overturning the termination."[3]

The parties now seek determination from this Court as to whether in reaching his conclusion the arbitrator exceeded the scope of his arbitral authority. Plaintiff asserts that once the arbitrator found that Cooper had committed acts establishing "just cause," his job was over. Defendant counters that the arbitrator may, within the bounds of his authority, factor due process considerations into the "just cause" analysis. The Court will consider these arguments in light of the strict appellate limitations placed on judicial courts reviewing arbitration decisions.

### Summary Judgment Standard

■ Summary judgment is appropriate only when no issues of material fact exist and the movant is entitled to judgment as a matter of law.[4] A court must draw all reasonable inferences of fact in favor of the party opposing the motion.[5] Indeed, so long as some evidence supports the disputed allegations, the court must deny the motion.[6]

As previously stated, the parties submit, and this Court concurs, that no genuine issue of material fact exists in this dispute. The question for determination is simply a legal question—did the arbitrator exceed his authority in factoring a due process analysis into the submitted "just cause" determination.

This Court, in reaching its decision, is cognizant of the limited power granted to courts of law reviewing arbitration awards.[7] *United Paperworkers International Union v. Misco, Inc.*[8] clearly delineated the appellate authority of judicial courts evaluating arbitration awards. "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate" and may not be disturbed by an appellate court that may disagree with the findings.[9] Stressing the preference for a *laissez-faire* approach towards arbitration the court continued, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."[10]

■ This limited review emphasizes the sanctity of labor relations and the voluntary submission of employee disputes to quasi-judicial determinations. However, this deference is not unlimited.[11] "[W]hile an arbitrator's decision is accorded considerable judicial deference to the extent is touches the merits of the controversy, his jurisdiction nevertheless is shaped by the underlying collective bargaining agreement."[12] The Court, in reviewing the arbitrator's ruling is confined (as is the arbitrator) to the parameters of the parties agreement *as set forth in their agreement.* Thus, in analyzing the propriety of the arbitrator's decision the Court must focus on the parties' written agreement to determine whether the arbitrator ignored (as opposed to misapplied) the collective bargain-

---

**3.** *Arbitrator's Opinion*, at page 47.

**4.** Fed.R.Civ.P. 56(c); *Walker v. Sears, Roebuck,* 853 F.2d 355, 358–59 (5th Cir.1988).

**5.** *Walker,* 853 F.2d at 358; *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

**6.** *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir.1981) (en banc).

**7.** *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599, 602 (5th

Cir.1989), *cert. denied,* 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990).

**8.** 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

**9.** *Id.* at 36, 108 S.Ct. at 370 (citing *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

**10.** *Id.* at 38, 108 S.Ct. at 371.

**11.** *Delta Queen,* 889 F.2d at 602.

**12.** *Id.*

ing agreement *in light of the submitted question.*

## Analysis

"We start with the termination overturned based upon due process violations."[13] Thus is the conclusion reached by the arbitrator in response to the question put forth for determination by the parties—[d]id the company have just cause to discharge the grievant, Jack R. Cooper? And consequently, the question now before the Court is whether this finding "based upon due process violations" exceeds the arbitral scope of a "just cause" determination. While both parties present the Court with excellent briefs and more than adequate authority, one case in particular seems to dispose of this dispute.

*Southern Council of Indus. Workers v. Bruce Hardwood Floors*[14] presented a nearly identical situation where the court found that an arbitrator exceeded her authority by incorporating certain due process guarantees into the parties collective bargaining agreement. The language is quite instructive and bears repeating in full:

> Applying the Sixth Circuit standards articulated in *Dobbs,* the Court holds that the arbitrator exceeded her authority and failed to adhere to the essence of the collective bargaining agreement. Several aspects of her reasoning indicate her departure from the essence of the agreement. To begin with, her finding that the "just cause" language meant that the Company was obligated to investigate the incident and to allow the employee an opportunity to give his side of the story before discharge imposes additional requirements that are not express terms of the collective bargaining agreement. The Sixth Circuit's observation that "the conduct of the arbitrator ... in reality constituted the addition of terms to a negotiated contract that was neither unclear nor incomplete" seems as appropriate here as it was in *Local 342, UAW v. T.R.W., Inc.,* 402 F.2d 727 (6th Cir.1968).

In addition, such a finding conflicts with the express terms of the agreement that allows the Company to discharge an employee immediately and without warning. If the parties had intended that both an investigation and opportunity for the employee to tell his or her side of the story ensue before discharge, they would not have used the "immediately" and "without warning" language. Any investigation would take time, and any opportunity to explain would necessitate notice. *The arbitrator's implication of procedural prerequisites to discharge ignores the plain language of the agreement. See Misco* [484 U.S. at 38–39], 108 S.Ct. at 371.

The Court reads the collective bargaining agreement as vesting with the company the right to discharge an employee once it finds that an employee has conducted himself in one of the expressly listed fashions. Only afterward does the agreement provide the employee with procedural due process.... [O]nce the company determined that the employee had failed to do assigned work, the collective bargaining agreement gave the Company the right to discharge the employee.[15]

The desire to provide due process guarantees to employees certainly is a noble and laudable goal. However, where the employee is a member of a union which submits to a collective bargaining agreement, that employee may sacrifice certain inherent due process protections in exchange for other guarantees the contract provides. The collective bargaining agreement is a conglomeration of the respective parties bargaining to achieve a mutually satisfactory working environment. An arbitrator may be called upon at some time to interpret the agreement, but rarely will he or she be consulted simply to critique and restructure the parties arrangement. As in other contract situations, the parties become bound by the terms they have selected. Arbitrators, like judges, are not at liberty to rewrite what they deem to be an unfair bargain, unless and until it becomes unconscionable.

**13.** *Arbitrator's Opinion,* at page 48.

**14.** 784 F.Supp. 1345 (M.D.Tenn.1992).

**15.** *Id.* at 1348–1349 (emphasis added).

■ Thus, an arbitrator exceeds his or her authority when he/she implicitly writes a due process clause into an agreement which provides for termination "immediately" or "without notice." These phrases (like many others) are intentional and have meaning and consequences specifically resolved by the parties. The arbitrator's disapproval of this arrangement should not be a factor in applying the question submitted to be interpreted against the written agreement. The arbitrator's role, much like the role of this Court, is limited. Mr. Cooper and the many other union members signed onto the collective bargaining agreement at issue. There is little doubt that Cooper, as a party to the agreement, knew the consequences of his dishonesty where such dishonesty is a posted offense for which termination can occur "without notice." This language is rather clear and, in this Court's opinion, provides sufficient notice. Finding that this is the parties agreed upon procedure for grievances and termination, the Court finds nothing unconscionable about such an arrangement. Unfortunate perhaps, but not unconscionable.

The arbitrator apparently did not approve of the methodology employed by the Company in its gathering evidence *after* it had alleged several acts or instances of misconduct. The arbitrator was troubled by the fact that only three of the seven lies were proven. This Court, however, is of the opinion that only *one* posted offense need be proven in order to justify termination without notice.[16] In his attempt to minimize Cooper's conduct, the arbitrator refers to several instances as inconsistencies or exaggeration, requiring that the Company prove that Cooper intentionally lied to justify Cooper's termination. What the arbitrator fails to understand, or perhaps was merely reluctant to apply, is that the contract unequivocally states that one strike (i.e. one lie) and the employee is sent to the proverbial show-

ers. The arbitrator apparently felt this system was somehow unfair and allowed Mr. Cooper several additional strikes.

Our review is limited to whether in making this generous adjustment the arbitrator was playing by the rules the Company and Union had constructed. Sensing a certain level of unfairness, the arbitrator constructed his own rules—in violation of his duty as well as the collective bargaining agreement. For this reason, the Court determines that the arbitrator exceeded his authority. The due process rights guaranteed and available to Cooper are those specified under the grievance section of the agreement. Any additions made thereto, particularly by a third party at a termination hearing, are improper. There was but one question to decide—Did the Company have just cause to discharge the grievant, Jack R. Cooper?

### Conclusion

The Company and the Union submitted a very limited and specific question to arbitration for determination. The arbitrator, in reaching his answer, incorporated certain due process considerations into the parties' collective bargaining agreement. This inclusion exceeded the scope of the arbitrator's authority. The parties' agreement clearly states that dishonesty is *per se* "just cause" for termination "without notice." Mr. Cooper committed *at least* three acts of dishonesty toward the Company. In response, Mr. Cooper was terminated without notice. There is nothing violative of the parties' arrangement in such action. The rules were clearly stated and Mr. Cooper broke them. The arbitrator's attempt to minimize Mr. Cooper's conduct is not consistent with his role to determine the existence or non-existence of "just cause." Having concluded that Mr. Cooper affirmatively lied to the Company *on at least one occasion*, the arbitrator

---

16. This Court agrees, at least in principle, with the arbitrator that this particular termination exudes a foul and suspicious odor. Having carefully reviewed the evidence it is hard to find clean hands on either Cooper or the Company. Ours, however, as has been previously stated, is a limited role. The inquiry is simply this—did the arbitrator exceed his authority. While the Court comes down in the affirmative, it is cognizant that Exxon went to great lengths to rid themselves of Mr. Cooper's services. Likewise, the Union fought quite fiercely to maintain Cooper's employ despite that fact that on numerous occasions he lied to the Company. Were the legal issue not so straightforward, this case would certainly present the Court with a difficult decision as both parties have acted in a manner undeserving of legal relief.

was compelled under the parties' agreement to find that "just cause" existed.

The language is clear: dishonesty constitutes just cause ... just cause may result in termination without notice. Mr. Cooper was dishonest. The attendant finding (i.e. "just cause" existed) should have ended the arbitrator's role in this controversy. For this reason, and the reasons set forth above, this Court is of the opinion that Plaintiff's Motion for Summary Judgment should be GRANTED, and accordingly, Defendant's Cross–Motion for Summary Judgment DENIED.

In accordance with the foregoing, it is hereby ORDERED that the arbitrator's award be VACATED, as the arbitrator exceeded the scope of his authority in rendering his decision.