53 F.3d 331
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 INTERNATIONAL BROTHERHOOD OF TEAMSTER, AFL-CIO, Plaintiff-Appellee,
v.
EXECUTIVE JET AVIATION, INC., Defendant-Appellant.
 No. 94-3402.
 United States Court of Appeals, Sixth Circuit.
 May 1, 1995.
 
 Before: KEITH and NELSON, Circuit Judges; BELL, District Judge.*
 PER CURIAM.
 
 
 1
 In this labor dispute, Defendant-Appellant, Executive Jet Aviation, Inc. (EJA), challenges the district court's vacating in part of the arbitrator's decision and award in favor of EJA. For the reason discussed below, the court reverses the district court's judgment.
 
 
 2
 * On November 27, 1991, EJA terminated the employment of one of its pilots, Lewis Anderson. EJA terminated Anderson as the result of what Anderson allegedly said during a conversation with Richard Rogers, the chief pilot of one of EJA's clients, in Des Moines, Iowa, on October 23, 1991. The arbitrator in the instant case found that Anderson told Rogers that EJA was experiencing serious financial problems, that EJA's major owner was skimming money from EJA, that labor-management relations were poor, that there might be a job action of some kind, and that EJA's management was not of the caliber that it once had been.
 
 
 3
 On November 1, 1991, Rogers contacted EJA concerning this conversation. On November 11 and 12, EJA determined that Anderson's employment should be terminated as a result. Accordingly, Anderson, who was in the midst of a two-week vacation, was told to report to a meeting on November 17. At the meeting, the arbitrator found, EJA did not inform Anderson of Rogers's identity or the exact words that Rogers had said that Anderson said. However, EJA did inform Anderson that he was being terminated because a customer had said that Anderson had made disparaging remarks concerning the safety of EJA's product, and that the conversation occurred in Des Moines on October 23, 1991. It is clear from the record that Anderson recalled the conversation (albeit he did not recall Rogers's name), although he asserts that the conversation was significantly different from Rogers's account. Following the meeting, EJA presented Anderson with a written notice of his discharge.[1]
 
 
 4
 That same day, Anderson filed a grievance in which he asserted that his employment had been unjustly terminated. On November 18, 1991, Plaintiff notified EJA in writing that, pursuant to Section 21-1(b) of the collective bargaining agreement (CBA),[2] it wanted an investigation and hearing within ten days, and that, pursuant to Section 21-1(c) of the CBA,[3] it wanted a precise statement of the charge against Anderson.
 
 
 5
 On November 19, 1991, EJA sent certified letters to Anderson and Plaintiff. Those letters advised them that a hearing would be held on November 27. The letter further stated:
 
 
 6
 With regard to your request for a copy of the "precise charge" against you, please consider the following:
 
 
 7
 [Anderson] was discharged from Executive Jet Aviation on November 17, 1991 because he disparaged EJA's "product", namely safe, efficient jet transportation, in a conversation with a customer's representative. Additionally, this conduct was inappropriate under the GENERAL CONDUCT Section of EJA's FLIGHT OPERATIONS MANUAL.
 
 
 8
 At the November 27 hearing, EJA repeated the accusation that Anderson had made disparaging remarks about EJA's product to a customer's representative, but again did not disclose Rogers's name or the exact statements which Rogers had said that Anderson had said.
 
 
 9
 Following the November 27 hearing, Anderson filed another grievance in which he asserted that EJA violated his right to union representation at the November 17 meeting, and that EJA had failed to present him with the precise charges against him as he had requested in his November 18 letter. On December 4, EJA notified Anderson that it was upholding its November 17 termination of his employment. On December 17, Anderson requested a hearing before EJA's Pilots System Board of Adjustment. The Board met on January 6 and 27, 1992, and deadlocked on two of the issues presented. Therefore, an arbitration hearing was held on May 26 and 27, 1992, to decide these issues.
 
 
 10
 In her decision, the arbitrator found that Anderson had made the disparaging remarks and that the termination of his employment was therefore justified. She concluded that, although Anderson may have been unaware that the November 17 meeting had been called to terminate his employment, he never requested that he be given union representation. The arbitrator decided against Plaintiff on this issue, a decision which Plaintiff did not contest in the district court. With regard to the precise charge issue, the arbitrator concluded:
 
 
 11
 In sum, although the company did not spell out for grievant how it happened to learn of Rogers' conversation with grievant or the exact words that Rogers used in describing the conversation, it did clearly identify the conversation sufficiently that grievant remembered it "very well". It also conveyed the essence of the conversation, namely that grievant had made disparaging remarks about the company.
 
 
 12
 App. at 111. The arbitrator also concluded that EJA "clearly was not prejudiced by Smith's failure to identify Rogers, or by his failure to give more specifics." App. at 99.
 
 
 13
 On October 16, 1992, Plaintiff filed this action in the district court seeking an order vacating the arbitrator's award. On December 13, 1993, the district court issued an Opinion and Order vacating a portion of the arbitrator's decision and award. The district court concluded that the arbitrator had expressly found that EJA had violated Section 21-1(c) of the CBA, and that the arbitrator had ignored this clear provision and instead applied her own notion of fairness. EJA filed a timely notice of appeal on January 10, 1994.
 
 II
 
 14
 In United Paperworkers Int'l Union v. Misco, Inc. 484 U.S. 29 (1987), the Supreme Court explained the narrow and limited scope of judicial review of arbitration awards:
 
 
 15
 Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject the award on the ground that the arbitrator misread the contract.
 
 
 16
 Id. at 37-38. However, "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Id. at 38.
 
 
 17
 This court has previously considered when an award might not draw its essence from a CBA:
 
 
 18
 [T]here may be a departure from the essence of the agreement if "(1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement."
 
 
 19
 Bruce Hardwood Floors v. Southern Council of Indus. Workers, 8 F.3d 1104, 1107 (6th Cir.1993) (quoting Dobbs, Inc. v. Local 614, Int'l Bhd. of Teamsters, 813 F.2d 85, 86 (6th Cir.1987)).
 
 III
 
 20
 The sole question in this case, therefore, is whether the arbitrator ignored a precise term of the CBA and instead applied general considerations of fairness and equity instead of the precise terms of the agreement. After careful review of the arbitrator's decision, this court concludes that the district court erred when it stated that the arbitrator "explicitly found that [EJA] failed to comply with" Section 21-1(c) of the CBA. See App. at 290. Rather, as indicated above, the arbitrator found that EJA did not inform Anderson of Rogers's identity or the exact words that Rogers had said that Anderson had said, and that Anderson was not prejudiced by these failures. Nowhere in her opinion, however, did the arbitrator explicitly find a violation of Section 21-1(c).
 
 
 21
 Rather than finding a violation of Section 21-1(c), the arbitrator appears to have found that EJA's failures did not constitute a violation of Section 21-1(c) because EJA's notices satisfied the precise charge requirement. It may well be that the arbitrator's interpretation of Section 21-1(c) was flawed in this regard, but that is irrelevant for the purpose of judicial review. See Misco, 484 U.S. at 38. The district court overstepped the bounds of this limited scope of review by vacating the award simply because it disagreed with the arbitrator's interpretation of Section 21-1(c).
 
 IV
 
 22
 For the reason stated above, we REVERSE the district court's judgment.
 
 
 23
 Damon J. Keith, Circuit Judge, dissenting.
 
 
 24
 As the majority correctly states, it is well established, by this Circuit and the United States Supreme Court, an Arbitrator's decision is subject to very limited scrutiny. See United States Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); Bruce Hardwood Floors v. Southern Council of Industrial Workers, 8 F.3d 1104, 1107 (6th Cir. 1993). A reviewing court may not overturn an arbitration award "so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his/her authority." Misco, 484 U.S. at 38. However, an arbitrator must interpret and apply the collective bargaining agreement as written. Sears, Roebuck and Co. v. Teamsters Local Union No. 243, 683 F.2d 154, 155 (6th Cir. 1982). An arbitration award may be vacated when the arbitrator's decision is a direct contradiction to the clear terms of the collective bargaining agreement or fails to draw its essence from the agreement. International Association of Machinists and Aerospace Workers, AFL-CIO, District 154, Local Lodge No. 2770, v. Lourdes Hospital, 958 F.2d 154, 156 (6th Cir. 1992).
 
 
 25
 In the instant case the Arbitrator found the Defendant-Appellant, Executive Jet Aviation ("EJA"), did not comply with explicitly stated provisions of the Agreement. She determined EJA did not provide Lewis Anderson ("Anderson") with proper notice of their November 17 decision to terminate his employment and failed to provide him with a precise copy of the charges against him. However, the Arbitrator found no violation because she determined Anderson had not been prejudiced. The Arbitrator found no prejudice because: 1) Anderson never asked for union representation, 2) because he later was given adequate notice and representation at other proceedings involving his termination and 3) he was able to recall his conversation with Richard Rogers which led to his termination.
 
 
 26
 Sec. 21-1(a) of the Collective Bargaining Agreement ("Agreement"), between the International Brotherhood of Teamsters and EJA, does not give an arbitrator the option to consider the prejudice to an employee when EJA does not comply with the Agreement. The Agreement is not ambiguous, it clearly requires EJA to provide its employees with advance notification of any termination proceedings and a precise copy of the charges involved in their termination. This information must be given to the employee and failure to do so is a violation of the agreement regardless of prejudice to the employee. Because the Arbitrator in this case acknowledged EJA's violations she was bound to apply the terms of the Agreement as written. By applying a prejudice analysis, the Arbitrator did not apply the terms of the Agreement as intended by the parties when it was created.
 
 
 27
 I would AFFIRM the decision of the district court and vacate the arbitrator's decision because it fails to properly apply the terms of the Agreement. Therefore, I respectfully dissent.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Section 21-1(a) of the collective bargaining agreement provides, "In the event the Company finds just cause to discharge or otherwise discipline any Crewmember, it shall do so by notifying the Crewmember in writing of such action, which notice will take effect as of the date of receipt by the Crewmember."
 
 
 [2]
 Section 21-1(b) of the CBA provides: "The Crewmember may make written request to the Director of Operations, for an investigation and hearing within ten (10) days after receiving such notification. Such investigation and hearing will hold within ten (10) days after the Company receives the written request from the Crewmember from [sic] an investigation and hearing."
 
 
 [3]
 Section 21-1(c) of the CBA provides: "Prior to investigation and hearing, the Company shall furnish the Crewmember with a copy of the precise charge or charges against him."